A00A1053. McCLUNG SURVEYING, INC. et al. v. WORL et al.
(541 SE2d 703)

POPE, Presiding Judge.

James L. and Desiree Worl filed suit against McClung Surveying, Inc. and Perry E. McClung[1] asserting claims for fraud, breach of contract and intentional infliction of emotional distress in connection with a survey McClung prepared on their property. McClung moved for summary judgment, but the motion was denied. Following the trial court's certification of the matter for immediate review, we granted McClung's application for interlocutory appeal.

On or about July 30, 1991, the Worls entered into a contract to purchase a house bordering the Yellow River in Gwinnett County from J. H. and Ann Ledbetter for a purchase price of $147,500. The contract provided that the sale would close on or before August 29, 1991. The Worls applied for a Veterans Administration (VA) loan. In response to their application, the Worls received a Certificate of Reasonable Value from the VA that valued the property at only $132,000. The certificate also noted that the property was in a flood hazard zone and that flood insurance would be required. The Worls became concerned about the purchase and consulted their real estate agent. According to the Worls, the real estate agent told them that the VA often overstated the extent of a flood hazard zone and will often undervalue the property. The realtor then obtained a copy of a survey on the property.

---

[35] See *McGhee v. State*, 237 Ga. App. 541, 545 (1) (515 SE2d 656) (1999) (" 'any allegation not raised at trial is deemed waived' ").

[1] For ease of reference, McClung Surveying, Inc. and Perry E. McClung will be referred to collectively as "McClung."

Although the purchase contract did not specifically require a survey, the closing attorney had retained McClung Surveying on behalf of the Worls' lender to survey the property.[2] The McClung survey reflected that part of the property was in a flood hazard zone, but specifically noted that the house itself was not. Perry McClung testified that this conclusion was made in reliance upon the recorded plat of the subdivision.

Prior to consulting the plat, however, McClung had checked the applicable flood map from the Federal Emergency Management Agency (FEMA). Because the FEMA map did not show subdivision or individual property lines, McClung overlaid a subdivision map onto the FEMA map. This procedure indicated that the Worls' property was in the flood hazard zone, but Perry McClung testified that the use of an overlay creates a margin of error in pinpointing the flood hazard zone boundary line and in locating a particular lot in relation to the boundary. Therefore, McClung testified that his company relies on the flood line as shown on the county plat because he believes that hydrology studies conducted in conjunction with preparing a plat are more accurate than the FEMA flood maps. At the time the survey was prepared, McClung offered to perform an elevation study, which is the only way to conclusively determine whether the house was in the flood hazard zone, but the closing attorney declined the offer.

The Worls testified that they relied upon the McClung survey in deciding to proceed with the purchase of the house. They ordered a second appraisal, which valued the property at $140,500. The Worls were able to renegotiate the purchase price based upon this value, and the sale closed on August 29. At the closing, the Worls received a Notice to Borrower of Special Flood Hazard Area, which offered them the opportunity to purchase flood insurance, but they declined.

The Worls refinanced their house approximately one year later. The lender again ordered a survey of the Worls' property in conjunction with the refinancing. That survey noted that the Worls' property lay in a flood hazard zone, but again noted that the house was not. Although the Worls gave the new surveyor a copy of the McClung survey, the second survey shows that the determination that the house was outside of the flood hazard zone was based upon another document, which was revised on May 4, 1992, after the McClung survey was prepared. The Worls received a copy of this survey along with another notification of the special flood hazard zone, but again declined insurance.

The Worls' house first flooded on Thanksgiving Day in 1992. And

---

[2] The cost of the survey was charged to the sellers at closing.

approximately two weeks later it flooded again. The house flooded four more times between 1992 and 1996. After unsuccessful attempts to get information from the Army Corp of Engineers, the Worls testified that they spoke with the Gwinnett County Drainage Department on two occasions and were told by unidentified county employees that the flooding resulted from unusually heavy rains. Then in February 1996, the Worls testified that they spoke with a supervisor with the county drainage department, who informed them that their property was in the flood hazard zone.

The Worls filed their complaint in January 1997, contending that McClung failed to disclose that the FEMA map showed that their house was located in a flood hazard zone.

1. McClung first asserts that the trial court erred in denying their motion as to the Worls' fraud claim. The Worls assert that the statement on the McClung survey that their house was not in a flood hazard zone was an intentional misrepresentation constituting actual fraud. In support of this assertion, they point to their expert's affidavit which stated that in the expert's professional opinion, McClung "must have known that the house was in the flood hazard zone."

Assuming, without deciding, that this assertion creates a jury question as to fraud on the part of McClung, we find that the Worls' claims are time-barred. The Worls received a copy of the McClung survey on or around the closing date of August 29, 1991. Their complaint was not filed until January 1997, long past the four-year statute of limitation for fraud. OCGA § 9-3-31. The Worls assert, however, that McClung's actual fraud tolled the statute of limitation under OCGA § 9-3-96.

But to establish tolling the Worls must prove fraud sufficient to have debarred or deterred them from discovering their cause of action. OCGA § 9-3-96. Therefore, they must establish the following three elements:

> (1) actual fraud on the part of the defendant involving moral turpitude, (2) which conceals the existence of the cause of action from the plaintiff, and (3) plaintiff's reasonable diligence in discovering his cause of action, despite his failure to do so within the time of the applicable statute of limitations.

(Citations omitted.) *Jim Walter Corp. v. Ward*, 245 Ga. 355, 357 (265 SE2d 7) (1980). We find that the Worls have failed to present a jury issue as to the last element. "Although questions of due diligence often must be resolved by the trier of fact, that is not always the case. A party may fail to exercise due diligence as a matter of law." *Wender & Roberts, Inc. v. Wender*, 238 Ga. App. 355, 360 (4) (518 SE2d 154)

(1999). See also *Fowler v. Overby*, 223 Ga. App. 803, 804 (1) (478 SE2d 919) (1996). And "[m]ere ignorance of facts constituting a cause of action does not prevent the running of a statute of limitations." (Citation and punctuation omitted.) *Macomber v. First Union Nat. Bank &c.*, 212 Ga. App. 57, 59 (2) (441 SE2d 276) (1994).

Prior to receiving the McClung survey, the Worls had received a VA certificate indicating that their property was in a flood hazard zone and valuing the property at $15,500 below their proposed purchase price. Based upon statements made by their realtor, the Worls chose to disregard the VA certificate and rely upon the McClung survey. Then fifteen months later, their house flooded twice within a span of two weeks. We find that once the house flooded, the Worls were on notice of a potential problem with the survey. At that point they had received conflicting information about the status of their property. When they experienced the very problem the survey indicated would not occur, the Worls were on notice that the survey may have been inaccurate. See *Hahne v. Wylly*, 199 Ga. App. 811, 813 (406 SE2d 94) (1991) (fraud limitation period tolled until purchasers first experienced problems with septic tank); *Gerald v. Doran*, 169 Ga. App. 22, 23 (311 SE2d 225) (1983) (limitation period began to run when purchasers first knew of problem with house's sewage system). But not until 1996 and four more incidents of flooding did the Worls commission their own investigation into the true status of their property.

And although the Worls testified as to hearsay conversations with unidentified county drainage department employees and other government officials, who provided apparently inaccurate information, we find this evidence was insufficient to create a factual question on the issue of due diligence. "The law does not afford relief to one who suffers by not using the ordinary means of information, whether the neglect is due to indifference or credulity." (Citation and punctuation omitted.) *Artzner v. A & A Exterminators*, 242 Ga. App. 766, 771 (1) (531 SE2d 200) (2000).

Accordingly, the statute of limitation on the Worls' fraud claim began to run no later than mid-December 1992, and their fraud claim filed in January 1997 is barred by the statute of limitation.

2. McClung next asserts that the trial court should have granted their motion with regard to the Worls' breach of contract claim. In support of this argument, the Worls assert that they were third-party beneficiaries of the contract between McClung and the closing attorney.

> In order for a third party to have standing to enforce a contract it must clearly appear from the contract that it was intended for his benefit. The mere fact that he would benefit

from performance of the agreement is not alone sufficient. Unless such an intention is shown from the face of the contract, defendant is under no duty and consequently plaintiff acquires no right as the third party beneficiary.

(Citations and punctuation omitted.) *Scott v. Mamari Corp.*, 242 Ga. App. 455, 457 (1) (530 SE2d 208) (2000).

Here, the parties had no written contract. The only writing in the record referencing the retention of McClung's services is an invoice listing the closing attorney's law firm as the customer. And while the invoice identifies the Worls as the purchasers of the property, that reference does not clearly show that they were intended beneficiaries of the contract between the closing attorney and McClung. "A contract is intended to benefit a third party when the promisor engages to the promisee to render some performance to a third person." *Scott v. Mamari Corp.*, 242 Ga. App. at 457 (1). Here, the closing attorney hired McClung on behalf of the lender. The Worls did not request a survey as a part of their contract. Rather, the contract provided that should the lender require a survey, the seller would pay for it. And the sellers paid for the McClung survey at closing. Therefore, even if McClung and the closing attorney were aware that the Worls would receive a copy of the survey and perhaps rely upon it, there is nothing in the record to suggest that the Worls were *intended*, and not merely incidental, beneficiaries of the contract.

Moreover, the Worls' breach of contract claim would be barred by the four-year statute of limitation applicable to nonwritten contracts. OCGA § 9-3-25.

3. McClung also argues that the trial court should have granted its motion as to the Worls' claim for intentional infliction of emotional distress. We agree.

To prove their claim for intentional infliction of emotional distress, the Worls are required to show that (a) McClung's conduct was intentional or reckless, (b) the conduct was extreme or outrageous, (c) the conduct caused the Worls emotional distress and (d) their emotional distress was severe. *Ashman v. Marshall's of MA*, 244 Ga. App. 228, 229 (1) (535 SE2d 265) (2000). Whether the alleged conduct on the part of McClung was sufficiently extreme or outrageous was a question of law for the court. Id. In order to rise to the requisite level of outrageousness, "[t]he defendant's conduct must be so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." (Citation and punctuation omitted.) *Frank v. Fleet Finance*, 238 Ga. App. 316, 318 (518 SE2d 717) (1999).

The alleged misrepresentations by McClung in this case cannot be described as extreme, outrageous, atrocious, intolerable or beyond

the bounds of decency. See *Frank v. Fleet Finance*, 238 Ga. App. at 318. Accordingly, the trial court improperly denied McClung's motion for summary judgment on the claim of intentional infliction of emotional distress.

Further, the Worls' claim for intentional infliction of emotional distress would be barred by the applicable two-year statute of limitation. See OCGA § 9-3-33; *Bauer v. North Fulton Med. Center*, 241 Ga. App. 568, 569 (2) (527 SE2d 240) (1999).

*Judgment reversed. Miller and Mikell, JJ., concur.*

DECIDED NOVEMBER 9, 2000 —
RECONSIDERATION DENIED DECEMBER 14, 2000.

*McCalla, Raymer, Padrick, Cobb, Nichols & Clark, Carol V. Clark*, for appellants.

*Cornelison & Van Gelderen, Leon Van Gelderen, John A. Ziolo*, for appellees.