A07A1357, A07A1369. AMSTEAD v. MCFARLAND; and vice versa.
(650 SE2d 737)

BLACKBURN, Presiding Judge.

In Case No. A07A1369, attorney Robert McFarland appeals a trial court's order allowing his former client Laura Amstead to recoup attorney fees, arguing that he should have been awarded more fees than he was allowed to retain under the theory of quantum meruit. In the related Case No. A07A1357, Laura Amstead appeals a separate trial court's order granting summary judgment to McFarland on her legal malpractice claims, arguing that genuine issues of material fact remain as to whether McFarland's alleged malpractice was the proximate cause of her damages, including loss of use damages, punitive damages, OCGA § 13-6-11 attorney fees, and damages for intentional infliction of emotional distress. In the interest of judicial economy, we consolidate these cases for review, and for the reasons set forth below, we affirm in both cases.

The undisputed evidence shows that in March 2003, Amstead and her ex-husband signed a contingency fee agreement to have McFarland represent them in a wrongful death claim, which arose from the death of their adult son in a motor vehicle accident. Several months after the lawsuit was filed in Gwinnett County, Amstead e-mailed McFarland to inform him that she was uneasy about having to respond to discovery and about having to deal with her ex-husband, and thus wanted out of the case. McFarland responded to Amstead, via e-mail, that the chances of recovery would be better if she remained in the case, but that if she still wanted out he would "need a letter from you, not an e-mail, demanding that I move the court to have your [sic] removed as plaintiff in the case and stating that you will have no further involvement with the matter including distribution of funds which will go entirely to your ex-husband." Amstead responded in a letter dated October 20, 2003, which stated in part: "I am demanding that you move the court to have me removed as plaintiff in the case. I will have no further involvement with the matter including the distribution of funds which will go entirely to my ex-husband." Consequently, on November 5, 2003, McFarland filed Amstead's notice of withdrawal from the wrongful death case, which stated that she "hereby withdraws as plaintiff of record. Any and all interest that she has in this case is transferred to . . . Robert Alan Amstead."

In November 2004, McFarland settled the wrongful death action for $325,000 on behalf of Amstead's ex-husband. McFarland informed Amstead of the settlement and requested that she sign the settlement and release agreement, which stated that she was waiving any claims against the defendants. When Amstead refused, McFarland filed a motion to enforce settlement, arguing that Amstead had transferred her interest to her ex-husband and that her signature was not necessary to the settlement. After receiving a service copy of the motion, which cited to OCGA § 19-7-1, Amstead informed McFarland that she believed she was entitled to a portion of the settlement. Shortly thereafter, Amstead's new counsel contacted McFarland to notify him that Amstead would be seeking an equitable apportionment of the settlement and to request that he hold all funds in trust pending resolution of that issue. The trial court then entered an order enforcing the settlement, in which it noted that Amstead could claim an interest in the proceeds but also authorized McFarland "to immediately receive his contracted fees and any authorized expenses of litigation." Pursuant to that order, McFarland claimed that his contracted fees totaled $108,333.34.

Amstead filed a motion for equitable apportionment of the settlement funds pursuant to OCGA § 19-7-1 (c). Following a hearing on this matter, the trial court found that Amstead had not waived her right to share in the settlement proceeds, despite the language in the withdrawal motion drafted by McFarland, and ordered that she be awarded 75 percent of those proceeds.

Amstead then filed a motion for recoupment of the attorney fees that McFarland had received from the settlement. The trial court denied the motion, finding that she was bound by the fee agreement she had signed with McFarland. However, on appeal, this Court held that McFarland was not entitled to his contingency fee from Amstead because his attorney-client relationship with her had ended prior to any "ultimate judgment or compromise settlement" proceeds being received as required by the contingency agreement to trigger his right to that fee. (Punctuation omitted.) *Amstead v. McFarland*[1] ("*Amstead I*"). We further opined that although McFarland was not entitled to his contingency agreement fee, he "may be entitled to recover fees from her for the period during which she was his client under the theory of quantum meruit, based on the reasonable value of any services rendered to her." Id. at 772 (2). Accordingly, we vacated the trial court's order and remanded the matter for further proceedings. Id. Following a hearing on the issue, the trial court ordered that the reasonable value of McFarland's services to Amstead for the time

---

[1] *Amstead v. McFarland*, 279 Ga. App. 765, 770 (2) (632 SE2d 707) (2006).

period during which she was his client totaled $30,949, and further ordered that McFarland return $50,301 to Amstead (the remaining $27,000 of his fee represented services to the ex-husband). McFarland appealed the trial court's order (Case No. A07A1369).

While her earlier appeal in *Amstead I* was still pending, Amstead filed a legal malpractice action against McFarland in Forsyth County. In her complaint, Amstead alleged that she suffered damages as a result of McFarland's failure to inform her of the potential conflicts posed by his representation of both her and her ex-husband in the wrongful death action and by his failure to inform her of her various rights under OCGA § 19-7-1. After discovery, McFarland moved for summary judgment on the ground that there was no evidence that his alleged acts or omissions proximately caused Amstead's damages. The trial court granted summary judgment to McFarland, and Amstead appealed (Case No. A07A1357).

### Case No. A07A1369

1. In his sole enumeration of error, McFarland contends that the trial court erred in limiting his quantum meruit claim to the time period during which Amstead was his client. We disagree.

"It is well settled that an attorney who is discharged prior to earning a contingency fee is entitled to recover fees from the client based on quantum meruit." *Kirschner & Venker, P.C. v. Taylor & Martino, P.C.*[2] See *Amstead I*, supra, 279 Ga. App. at 770-771 (2). In such circumstances, the attorney is only entitled to recover a fee based on the reasonable value of the services that the attorney had rendered to the client before being discharged. *Greer, Klosik & Daugherty v. Yetman.*[3] See *Amstead I*, supra, 279 Ga. App. at 772 (2); *Kirschner & Venker, P.C.*, supra, 277 Ga. App. at 513. "Determining the reasonable value of the services is the task of the [factfinder], whose finding will not be disturbed if there is any evidence to support it." *Centre Point Investments v. Frank M. Darby Co.*[4]

Here, McFarland's expert and McFarland testified that the reasonable value of the services that McFarland rendered to Amstead totaled approximately $81,000, which was an amount equaling three fourths of the total fees McFarland had received based on his contingency agreement. However, as McFarland admitted, this amount represented the value of his services from the time the wrongful

---

[2] *Kirschner & Venker, P.C. v. Taylor & Martino, P.C.*, 277 Ga. App. 512, 513 (627 SE2d 112) (2006).

[3] *Greer, Klosik & Daugherty v. Yetman*, 269 Ga. 271, 274 (2) (496 SE2d 693) (1998).

[4] *Centre Point Investments v. Frank M. Darby Co.*, 249 Ga. App. 782, 786 (2) (549 SE2d 435) (2001).

death action was filed in March 2003, to the time it was settled in November 2004, and thus included 13 months of time during which Amstead was no longer his client. As the trial court's order acknowledged, McFarland's method of calculating his quantum meruit claim ignored this Court's earlier opinion in this matter in which we held that "McFarland, Sr. may be entitled to recover fees from [Amstead] *for the period during which she was his client* under the theory of quantum meruit, based on the reasonable value of any services rendered to her." (Emphasis supplied.) *Amstead I*, supra, 279 Ga. App. at 772 (2). The trial court therefore determined that a fee of $30,949, representing approximately one third of McFarland's $81,250 quantum meruit claim, was a reasonable value of the services rendered to Amstead for the months during which she was McFarland's client. Accordingly, there was evidence to support the trial court's quantum meruit award. See *Payne v. Jones & Kolb*.[5]

## Case No. A07A1357

2. In Case No. A07A1357, Amstead contends that the trial court erred in granting summary judgment to McFarland, arguing that there are genuine issues of material fact as to whether McFarland's alleged legal malpractice proximately caused her damages. We disagree.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c); *Britt v. Kelly & Picerne, Inc.*[6] "On appeal from the grant or denial of a motion for summary judgment, we review the evidence de novo, and all reasonable conclusions and inferences drawn from the evidence are construed in the light most favorable to the nonmovant." *McCaskill v. Carillo*.[7] "To prevail on a legal malpractice claim, a client must prove that (1) he employed the defendant attorney; (2) the attorney failed to exercise ordinary care, skill, and diligence; and (3) this failure was the proximate cause of [the] damages to the client." *Holmes v. Peebles*.[8] To establish proximate cause, the client must show that "but for the attorney's error, the outcome would have been different; any lesser requirement would invite speculation and conjecture." (Punctuation omitted.) *Szurovy v. Olderman*.[9] "The defendant attorney is entitled to summary judgment if he shows that there is an absence of proof adduced by the

---

[5] *Payne v. Jones & Kolb*, 190 Ga. App. 62, 64 (3) (378 SE2d 467) (1989).
[6] *Britt v. Kelly & Picerne, Inc.*, 258 Ga. App. 843 (575 SE2d 732) (2002).
[7] *McCaskill v. Carillo*, 263 Ga. App. 890 (589 SE2d 582) (2003).
[8] *Holmes v. Peebles*, 251 Ga. App. 417, 419 (554 SE2d 566) (2001).
[9] *Szurovy v. Olderman*, 243 Ga. App. 449, 452 (530 SE2d 783) (2000).

client on the issue of proximate cause." (Punctuation omitted.) *Holmes*, supra, 251 Ga. App. at 419.

Amstead does not claim that McFarland committed malpractice by brokering an insufficient settlement in the wrongful death case. Instead, she points to McFarland's failure to inform her of the potential conflicts posed by his representation of both her and her ex-husband and to his failure to inform her of her rights under OCGA § 19-7-1. Specifically, she claims that but for this malpractice, she would have only hired one attorney and would not now be liable for paying two attorneys. Thus, she contends that the malpractice caused her damages in the form of the $30,949 in legal fees McFarland was allowed to retain as quantum meruit pursuant to the Gwinnett County trial court's order on her motion for recoupment.

However, to claim unnecessary attorney fees, Amstead must show that those fees were proximately caused by McFarland's negligence. See *Redwine v. Windham*;[10] *Houston v. Surrett*.[11] Here, Amstead has provided no evidence demonstrating that but for McFarland's alleged failures, she was forced to pay attorney fees to two attorneys instead of only one. Indeed, her paying of fees to another attorney, who had no hand in procuring the settlement in the wrongful death case, was solely a result of her own decision as opposed to any alleged failure by McFarland. Furthermore, her contention that the $30,949 in fees that McFarland retained pursuant to his quantum meruit award represents her damages is without merit as she cannot claim that but for McFarland's alleged malpractice, no attorney would have rendered such valuable service to her on the wrongful death matter. In fact, Amstead cannot show she suffered damages at all, as either McFarland or another attorney would have necessarily had to provide her with the valuable services necessary to procure the settlement in the wrongful death matter; otherwise, there would have been no monetary award at all. Accordingly, the trial court did not err in finding that Amstead failed to demonstrate that McFarland's alleged malpractice proximately caused her to suffer damages. See id. at 211 (3).

3. Amstead contends that the trial court erred in granting summary judgment because genuine issues of fact remain as to whether McFarland's retention of fees owed to Amstead pursuant to the Gwinnett County trial court's recoupment order entitles her to recover loss of use (interest) damages. This contention is without merit.

---

[10] *Redwine v. Windham*, 237 Ga. App. 149, 151 (513 SE2d 13) (1999).
[11] *Houston v. Surrett*, 222 Ga. App. 207, 211 (2) (474 SE2d 39) (1996).

Prior to the Gwinnett County trial court's January 18, 2007 order, there had been no adjudication of the amount of McFarland's attorney fees, if any, that Amstead was entitled to recoup. After that order was issued, McFarland filed a notice of appeal. "Where a judgment is entered and, within the time allowed for entering an appeal, an appeal is entered, the judgment shall be suspended." OCGA § 9-12-19. Accordingly, the Gwinnett County judgment was automatically suspended, and the trial court here did not err in granting McFarland's motion for summary judgment on loss of use (interest) damages.

4. Amstead contends that the trial court erred in granting summary judgment, arguing that there are genuine issues of material fact as to whether she suffered damages as a result of McFarland's alleged intentional infliction of emotional distress. We disagree.

To prove her claim for intentional infliction of emotional distress, Amstead is required to show that (a) McFarland's conduct was intentional or reckless, (b) the conduct was extreme or outrageous, (c) the conduct caused her emotional distress, and (d) her emotional distress was severe. *McClung Surveying v. Worl.*[12] Whether McFarland's alleged conduct is sufficiently extreme or outrageous was a question of law for the court. *Ashman v. Marshall's of MA.*[13] "In order to rise to the requisite level of outrageousness, the defendant's conduct must be so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." (Punctuation omitted.) *McClung Surveying*, supra, 247 Ga. App. at 326 (3). See *Frank v. Fleet Finance, Inc. of Ga.*[14]

Here, McFarland's alleged malpractice cannot be described as atrocious, utterly intolerable, or beyond the bounds of decency. See *McClung Surveying*, supra, 247 Ga. App. at 326-327 (3) (alleged misrepresentation by surveyor that home was not within a flood hazard zone cannot be described as outrageous); *Frank*, supra, 238 Ga. App. at 318 (bad faith breach of contract cannot be described as extreme or outrageous); *Fisher v. Toombs County Nursing Home*[15] (nursing home's discharge of patient in violation of contract was not outrageous); compare *David C. Joel, Attorney at Law, P.C. v. Chastain*[16]

---

[12] *McClung Surveying v. Worl*, 247 Ga. App. 322, 326 (3) (541 SE2d 703) (2000).

[13] *Ashman v. Marshall's of MA*, 244 Ga. App. 228, 229 (1) (535 SE2d 265) (2000).

[14] *Frank v. Fleet Finance, Inc. of Ga.*, 238 Ga. App. 316, 318 (518 SE2d 717) (1999).

[15] *Fisher v. Toombs County Nursing Home*, 223 Ga. App. 842, 846-847 (3) (479 SE2d 180) (1996).

[16] *David C. Joel, Attorney at Law, P.C. v. Chastain*, 254 Ga. App. 592, 596-597 (1) (562 SE2d 746) (2002).

(mental distress damages warranted where attorney's lack of supervision allowed firm's staff to settle cases without plaintiff's knowledge or consent). In addition, McFarland's use of litigation to retain his attorney fees does not give rise to a viable claim for intentional infliction of emotional distress. See *Savell, Williams, Cox & Angel v. Coddington;*[17] *Ga. Power Co. v. Johnson.*[18] Accordingly, the trial court did not err in granting summary judgment to McFarland on Amstead's claim of intentional infliction of emotional distress.

5. Amstead further contends that there are genuine issues of material fact as to whether she is entitled to punitive damages and attorney fees. We disagree.

"In accordance with OCGA § 51-12-5.1, punitive damages can only be awarded as additional damages." *Nelson v. Glynn-Brunswick Hosp. Auth.*[19] Similarly, a claim for attorney fees under OCGA § 13-6-11 will not lie when general damages are not awarded. *Vernon Library Supplies v. Ard.*[20] See *Russell Corp. v. BancBoston Financial Co.*[21] Since Amstead has failed to demonstrate that genuine issues of material fact exist as to whether McFarland proximately caused her any damages, the trial court did not err in granting summary judgment on her claims for punitive damages and attorney fees.

*Judgment affirmed in both cases. Ruffin and Bernes, JJ., concur.*

DECIDED JULY 17, 2007 — RECONSIDERATIONS DENIED JULY 30, 2007 AND AUGUST 8, 2007 — ▮

*Case No. A07A1357*

*Brian C. McCarthy*, for appellant.
*Carr & Palmer, Emory L. Palmer*, for appellee.

*Case No. A07A1369*

*Randall A. Meincke*, for appellant.
*Broughton & Fernandez, Allen L. Broughton*, for appellee.

---

[17] *Savell, Williams, Cox & Angel v. Coddington*, 176 Ga. App. 179, 180-181 (2) (335 SE2d 436) (1985).

[18] *Ga. Power Co. v. Johnson*, 155 Ga. App. 862, 863 (274 SE2d 17) (1980).

[19] *Nelson v. Glynn-Brunswick Hosp. Auth.*, 257 Ga. App. 571, 580 (5) (571 SE2d 557) (2002).

[20] *Vernon Library Supplies v. Ard*, 249 Ga. App. 853, 855 (4) (550 SE2d 108) (2001).

[21] *Russell Corp. v. BancBoston Financial Co.*, 209 Ga. App. 660, 663 (6) (434 SE2d 716) (1993).