**SECOND DIVISION**
**ANDREWS, P. J.,**
**MILLER and BRANCH, JJ.**

**NOTICE:** Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**November 12, 2015**

# In the Court of Appeals of Georgia

A15A1419. STANDARD v. FALSTAD et al.

ANDREWS, Presiding Judge.

Christy R. Standard sued Nathan Falstad and his employer, Wal-Mart Stores East, L.P., for maliciously prosecuting her for the offense of felony theft by shoplifting, and for intentional infliction of emotional distress, and sought the imposition of punitive damages and the award of attorney fees pursuant to OCGA § 13-6-11.[1] Standard appeals from the trial court's grant of summary judgment in favor of Wal-Mart. For the following reasons, we affirm.

The relevant facts are undisputed. Falstad worked for a Wal-Mart store in Peachtree City as an "Asset Protection Associate" trained in shoplifting investigations

---

[1] Standard's suit also alleged claims for false and malicious imprisonment and for negligence, but she withdrew those claims in her response to Wal-Mart's motion for summary judgment.

and prosecutions. On April 5, 2011, video cameras at the Wal-Mart store where Falstad worked recorded a woman attempting to steal a television from the store by bringing an empty television box into the store and obtaining a "return sticker" (representing that the box contained returned merchandise); then leaving the empty box in the store; placing a similar boxed television in her shopping cart; removing the store's security device from the box; and attempting to leave the store with the television without paying for it. Falstad was alerted when the security device was detached, at which point he saw the woman with the shopping cart and television already past the registers attempting to walk out the front door of the store. When a Wal-Mart "People Greeter" asked for a receipt, the woman left the cart and the television, walked to her car, and drove away. Falstad followed the woman from a distance as she walked to her car, saw the license plate on the car, and wrote down the number. While following the woman from behind, Falstad did not speak to the woman or see her from the front and did not see her face. Falstad then returned to the store and reviewed the store video which contained various images of the woman from the front and side showing her face. On the same day, Falstad contacted the Peachtree City Police Department; reported the woman's actions to a police officer; showed the officer the store's video of the woman; and gave the officer the license

2

number from the woman's car. The officer's affidavit confirms that he conducted a search on the car's license number; determined that the car with that license number (a silver 2006 Mazda 3) was registered to Christy R. Standard; and searched for and obtained Standard's driver's license registration information. The officer further states that he concluded "Ms. Standard appeared to have a similar driver's license photograph as the female seen in the security video," but that he told Falstad "that there was not sufficient evidence of an attempted theft at that point to pursue any criminal charges." Nevertheless, based on his personal observations, the store's video, and the information obtained by the police officer, Falstad submitted an application on April 7, 2011 to the Magistrate Court of Fayette County for a criminal arrest warrant for Standard's arrest for the offense of theft by shoplifting. Based on the application, the Magistrate Court scheduled a "pre-issuance hearing" for May 11, 2011 for the purpose of determining if there was probable cause to issue the arrest warrant.

Falstad and Standard were notified and appeared at the hearing. Falstad gave sworn testimony describing the woman's actions at the store on April 5, 2011 that he personally witnessed, describing the woman's actions that he saw on the store's video, and describing his report to the police and the police investigation showing

3

that the license number he saw on the car driven by the woman belonged to a car registered to Standard. Standard gave sworn testimony that she was not the woman seen by Falstad at the store or on the video; that she was at home all day on April 5, 2011 recovering from being hospitalized; and that her husband had her car. Standard testified that she drove a Mazda 3 but that she did not know the license number. In response to Standard's denial that she was the woman at the Wal-Mart store, Falstad stated under oath: "Okay[,] well someone who looks very similar to you." When the Magistrate Judge commented that Falstad was "saying that [Standard] is in the video," Standard asked the Magistrate Judge to compel Falstad to produce the video, but the Judge refused. After hearing testimony from Falstad and Standard, the Magistrate Judge found that Falstad's testimony was sufficient to establish probable cause, and the Judge immediately issued the arrest warrant and set bond at $2,000.00. Standard testified by deposition that she was arrested immediately after the Magistrate Court probable cause hearing on May 11, 2011; that she posted bond and was released about 16 hours after she was arrested; and that, after the probable cause hearing, she had no other court appearances on the charge. On June 16, 2011, the Fayette County District Attorney filed a document captioned "Dismissal" in the Magistrate Court referencing the warrant number on which Standard was arrested,

4

and stating that the State "hereby dismisses the above charge for the following reason: Insufficient evidence to secure a conviction beyond a reasonable doubt." Falstad subsequently testified by deposition that he had an opportunity to see Standard at the probable cause hearing on May 11, 2011, and that the sworn testimony he gave at the hearing in support of the application for an arrest warrant was based on his belief at the time that Standard was the woman he saw in the store video. A subsequent affidavit from an investigator in the District Attorney's office stated that the investigator spoke with Falstad on June 3, 2011; that Falstad told him Standard "was not the same woman he saw shoplifting in reference to the charge he was pursuing;" and that he advised Falstad "that [the District Attorney's office] would be dismissing the case against Standard, which he understood as the reasonable thing to do." Although the record contains evidence that Standard, Standard's ex-husband, and Standard's grandparents testified that they did not recognize the woman shown in the store video, Standard's cousins testified that they recognized the woman shown in the video as Standard's mother.

Standard does not dispute that the woman's actions, as shown in the store's video, provided probable cause to issue an arrest warrant for theft by shoplifting. See OCGA § 16-8-14 (a). Rather, Standard contended in response to the motion for

summary judgment that she was not the woman shown in the video, and that Falstad (and his employer, Wal-Mart, on the basis of respondeat superior) maliciously prosecuted her for shoplifting despite knowing that she was not the woman in the video.

> In order to prevail on a claim for malicious prosecution, a plaintiff must show the following: (1) a criminal prosecution; (2) instigated without probable cause; (3) with malice; (4) pursuant to a valid warrant, accusation, or summons; (5) that terminated in the plaintiff's favor; and (6) caused the plaintiff damage.

*McNeely v. Home Depot, Inc.*, 275 Ga. App. 480, 482 (621 SE2d 473) (2005) (citation, punctuation, and footnote omitted). "For purposes of such claim, the prosecution must be 'carried on,' which requires 'an inquiry before a committing court.' *Swift v. Witchard*, 103 Ga. 193, 196 (2) (29 SE 762) (1897)." *McNeeley*, 275 Ga. App. at 482 (citations and footnote omitted); OCGA §§ 51-7-40 and 51-7-42. This means "when instituted, the prosecution has been carried on so far as to bring the person charged before some officer, body or authority invested by law with the power and duty of inquiring into the merits of the charge." *Swift*, 103 Ga. at 196. The suing out of a warrant, if done maliciously and without probable cause, wrongfully institutes a prosecution, but, without more, it is not sufficient to sustain a cause of

6

action for a prosecution which was then maliciously "carried on." Id. at 196-197;

*Walker v. Bishop*, 169 Ga. App. 236, 238 (312 SE2d 349) (1983).

> Even if the warrant issued, and the party was arrested, this, without more, would not be sufficient cause for such an action. The party aggrieved would have a right of action for malicious [or false] arrest, as is provided by the Civil Code in another section.

*Swift*, 103 Ga. at 197; *Walker*, 169 Ga. App. at 238. When Standard appeared before the Magistrate Court, the Court determined only that there was probable cause to institute a prosecution, and issued the warrant pursuant to which Standard was immediately arrested on the charge of theft by shoplifting. Neither the proceeding in the Magistrate Court to establish probable cause to issue the arrest warrant, nor issuance of the warrant by the Magistrate Court, was evidence of a prosecution "carried on" by "an inquiry before a committing court . . . with the power and duty of inquiring into the merits of the charge." *Swift*, 103 Ga. at 196-197; *Garner v. Heilig-Meyers Furniture Co.*, 240 Ga. App. 780, 781-782 (525 SE2d 145) (1999).

In response to the motion for summary judgment, Standard provided undisputed evidence showing that, after the Magistrate Court found probable cause to issue the arrest warrant and Standard was arrested, the warrant was dismissed by the District Attorney, and Standard never again appeared before any court on the

7

charge. In fact, Standard's complaint for malicious prosecution alleges only that she was arrested based on Falstad's application for an arrest warrant and his testimony before the Magistrate Court, and that, after Standard was arrested, the District Attorney dismissed the warrant. The allegations of the complaint and the undisputed facts show that Standard failed as a matter of law to establish any claim for malicious prosecution, and that her alternative cause of action was for false arrest.[2] See OCGA § 51-7-1. Accordingly, Wal-Mart was entitled to summary judgment on the malicious prosecution claim. OCGA § 9-11-56; *Lau's Corp. v. Haskins*, 261 Ga. 491, 491 (405 SE2d 474) (1991) (defendant entitled to summary judgment by showing no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case). The trial court granted summary judgment in favor of Wal-Mart on the malicious prosecution claim for a different reason – finding as a matter of law that probable cause existed to issue the arrest warrant to institute the prosecution. We need not address that finding, and affirm the trial court's grant of summary judgment on this claim under the right for any reason rule.

---

[2] Standard's complaint does not explicitly assert a cause of action for false arrest, and, in response to Wal-Mart's motion for summary judgment, Standard affirmatively stated that "Plaintiff has not asserted a claim of false arrest."

The trial court also correctly granted summary judgment in favor of Wal-Mart on Standard's claim for intentional infliction of emotional distress. Standard asserts that the same conduct she cited in support of her malicious prosecution claim also supported her claim for intentional infliction of emotional distress. On a claim for intentional infliction of emotional distress, the plaintiff must produce evidence to establish all of the following elements:

> (1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the plaintiff's emotional distress; and (4) the emotional distress must be severe. *MARTA v. Mosley*, 280 Ga. App. 486, 490-491 (634 SE2d 466) (2006).

*Udoinyion v. Re/Max of Atlanta*, 289 Ga. App. 580, 584 (657 SE2d 644) (2008). To qualify as sufficiently "extreme and outrageous" the conduct at issue "must be so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Kaiser v. Tara Ford, Inc.*, 248 Ga. App. 481, 488 (546 SE2d 861) (2001) (citation and punctuation omitted).

As set forth above, undisputed evidence in the record showed the following: Wal-Mart's employee, Falstad, observed a woman on the store's video system engaging in conduct that provided probable cause to believe that the woman committed the offense of shoplifting in the store. After obtaining the license number

from the car the woman drove away from the store, Falstad immediately contacted police, showed the police officer the video, and gave the officer the license number. The officer conducted a search on the license number, which showed that the number belonged to a Mazda 3 automobile registered to Standard. The officer obtained Standard's driver's license information, compared Standard's license photograph to the woman the officer saw in the store video, and the officer concluded that Standard's photograph appeared similar to the woman in the video. Based on information derived from his own observations and the police investigation, Falstad applied to the Magistrate Court for a warrant to have Standard arrested for shoplifting. At the Magistrate Court hearing on the warrant application, Falstad described to the Court the actions taken by the woman on the store video – actions sufficient to establish probable cause that the woman in the video committed the offense of shoplifting. Falstad told the Court that he obtained the license number of the car the woman drove from the store; that he reported the incident to the police; and that the police investigation revealed that the car (a Mazda 3) belonged to Standard. Standard told the Court she owned a Mazda 3 automobile, but could not remember the license number, and testified that she had never been to the Wal-Mart store at issue and was not the woman in the store video. Falstad, who had the

10

opportunity to see Standard face-to-face at the hearing, testified to his belief that Standard was the woman in the video, and that Standard "looks very similar" to the woman he saw in the video. After hearing testimony from Falstad and Standard, the Magistrate Court found probable cause to issue a warrant to have Standard arrested on the shoplifting charge. Standard was arrested and spent about 16 hours in jail before she was released on bond. About five weeks after Standard was arrested, the District Attorney dismissed the warrant stating that there was insufficient evidence to secure a conviction beyond a reasonable doubt. The District Attorney's investigator said that the warrant was dismissed subsequent to a conversation he had with Falstad about three weeks after the arrest in which Falstad told him that Standard was not the woman in the store video.

On the above facts, there was a rational basis for Falstad's identification testimony in Magistrate Court that Standard looked similar to the woman in the store video, and that he believed she was the woman in the video seen committing the offense of shoplifting. The police officer's independent statement that Standard (based on her driver's license photograph) looked similar to the woman seen in the video supports this conclusion. The fact that Falstad subsequently told the District Attorney's investigator that Standard was not the woman in the video did not change

the objective facts supporting his earlier identification testimony, and did not support a reasonable inference that Falstad deliberately misidentified Standard to obtain the arrest warrant without any factual basis. Rather, it reasonably suggests that Falstad reconsidered the same objective facts and subsequently changed his mind about the identification. Whether the conduct at issue was sufficiently extreme and outrageous was a question of law for the court. *Amstead v. McFarland*, 287 Ga. App. 135, 140 (650 SE2d 737) (2007); *McClung Surveying, Inc. v. Worl*, 247 Ga. App. 322, 326 (541 SE2d 703) (2000). On the present facts, we find that the trial court correctly concluded that the conduct at issue was not sufficiently extreme and outrageous, and correctly granted summary judgment to Wal-Mart on the claim for intentional infliction of emotional distress. OCGA § 9-11-56; *Lau's Corp.*, supra.

Because the trial court correctly granted summary judgment to Wal-Mart on Standard's underlying tort claims, the court also correctly concluded that Wal-Mart was entitled to summary judgment on Standard's claims for punitive damages and attorney fees. *Johnson v. Johnson*, 323 Ga. App. 836, 842 (747 SE2d 518) (2013).

*Judgment affirmed. Branch, J., concurs. Miller, J., concurs in judgment only.*