## A06A2394. MILUM v. BANKS.

(642 SE2d 892)

BARNES, Chief Judge.

Rafe Banks III sued David Milum for general and punitive damages, contending that Milum published on his website libelous allegations about Banks. A jury awarded Banks $50,000 in general damages but no punitive damages. The trial court denied Milum's motion for a judgment notwithstanding the verdict, and he appeals. For the reasons that follow, we affirm.

The evidence at trial showed that Milum was charged in December 1998 with driving under the influence (DUI). He hired Banks, an attorney and the former district attorney for the Blue Ridge Judicial Circuit, to represent him for a flat fee of $3,000. Banks worked on the case until December 2000 or January 2001, when Milum discharged Banks due to what Banks described as "a fundamental disagreement on how to address the trial of the case. Mr. Milum wanted to make it

a political forum, and my view was it should be addressed on the facts." Milum obtained a second lawyer, and a jury subsequently acquitted him.

In August 2001, Milum sent Banks an e-mail message stating that he thought the county solicitor-general's office had a vendetta against Banks. Milum said Banks should have told him about this vendetta because it affected how the solicitor-general handled Milum's DUI case, and resulted in a "half-hearted excuse for a defense" from Banks. Because Banks took Milum's case "knowing that it was a doomed defense from the beginning," Milum asked Banks to return his money. In exchange Milum said he would "be quiet on this issue as far as you are concerned in the future." Banks declined to return the fee, noting that despite any alleged vendetta, he had obtained an offer from the solicitor-general to allow Milum to plead to reckless driving instead of DUI, a highly sought-after lesser offense.

On May 10, 2004, Milum posted on his website, The Forsyth County Political Forum, a comment titled "Polo Fields Residents Don't Know About Attorney Rafe Banks?" In it, Milum stated,

> Are you a drug dealer when you have an ounce of cocaine in your possession worth hundreds of dollars or when you carry $25,000.00 to a Superior Court judge . . . to keep a drug dealer out of jail? Are you a drug dealer when you have a gram of methamphetamine in your possession or is it when you arrange for a lifelong drug dealer to escape doing eighteen years in federal prison for attempted murder? Polo Fields resident Rafe Banks is both. For the proof of this, visit our . . . video. . . . A cocaine dealer names Rafe Banks as being involved in bribing judges here in Forsyth County and in Federal Court in Miami. . . . Rafe Banks will never make one single move against me or this website because he knows that we have the witnesses to prove that he carried these drug dealer payoffs to [a] judge. . . .

Later that day, a reader asked whether Milum's comment that "[a]ny man who would sell his soul for a sack full of drug dealer coins has no place in decent society" included lawyers who represented drug dealers. An hour later, Milum responded, "No. This does not include those attorneys who simply defend drug dealers. I am speaking of transporting substantial bribes, as did attorney Rafe Banks, to those crooked judges . . . to get drug dealers off. . . ."

On June 9, 2004, Milum posted another comment on his website titled, "Cumming Attorney Rafe Banks, Drug Dealer Bribery Mule." The comment included this text:

Rafe Banks, do you still take drug dealer bribes to Forsyth County judges? How long has it been since you delivered to a judge $25,000 in cash for the release of a drug dealer? I know that you carried this kind of cash to [a] late Forsyth County Superior Court judge. . . . I have witnesses to that fact. Which judge do you pay bribes to now Rafe, since [that judge] went to hell? Is it [another] Forsyth County judge? . . .

Milum went on to ask if Banks recalled him saying he would "make the courthouse doors rattle with so much of their secret information they couldn't handle it all" when the judge on his DUI case ordered the case to proceed, then described why he thought the solicitor-general was retaliating against him. The comment ended with:

Rafe, don't you wish you had given back my three thousand dollar retainer, when I asked you too, [sic] because I found out you were helping them set me up? Rafe, do you also remember how I fired your ass, not once but twice before two different judges in Forsyth County courtrooms? That had to sting, didn't it? How about now Rafe, are you still selling out your clients, as you did me? How much of that dirty drug money did it take for you to buy that big house in Polo Fields, Rafe? . . . I'll ask again: can you hear those courthouse doors rattling now Rafe Banks Cumming Georgia attorney, who is a drug dealer bribery mule?

On June 16, 2004, Banks' attorney sent Milum a letter demanding he retract these statements, and Milum declined to do so. Banks then sued him for publishing false, libelous and misleading allegations on the website. At trial, Milum acknowledged that in his interrogatories he named nine people with personal knowledge of these bribery allegations. Some of those people were mentioned in or appeared on a videotape that mysteriously appeared on Milum's carport steps. In that tape, a woman who was charged with a drug offense alleged that she heard that Banks and another lawyer had bribed judges, but Milum admitted he never personally talked to the woman making the statement, the sergeant questioning her, or anyone else before posting his comments and a portion of the tape on his website.

The other lawyer named in the tape, who represented both the woman being interviewed and the man on whose behalf a bribe was allegedly made, denied the bribery allegations and testified that he had never spoken to Milum. The sergeant questioning the woman on the tape testified that Milum never contacted him, and noted that the woman had no direct knowledge about anything she alleged, but

merely repeated what she said she had been told by others. The sergeant turned the tape over to his captain and did not know how Milum gained possession of it. The sergeant, then in charge of the Criminal Investigation Division, gave the tape to the sheriff at the time, and did not investigate the matter further himself because the woman was not credible. To his knowledge the matter was not referred to the district attorney's office or to the Georgia Bureau of Investigation, and Milum never contacted him about it.

Milum also identified in his interrogatory answer two women he spoke to before posting his comments who he said had personal knowledge of the alleged bribery. He testified that one woman told him she spent $75,000 to $80,000 to get her stepson, who was represented by Banks, out of trouble, and he thought they meant that the entire $75,000 had been paid to Banks. The stepson had been charged with drug offenses for which he could have been sentenced to five years, Milum said, but only got probation. Milum recalled that "in the conversation, she made mention, or I did, . . . do you suppose some of that money went to pay off the judge?" Milum said the woman's mother also speculated about a possible bribe.

The first woman testified, however, that she paid Banks $10,000 to represent her stepson and knew nothing about any money being paid to a judge on her stepson's behalf. The rest of the money was for rehabilitation and travel expenses. In her conversation with Milum, he raised the topic of bribery, and she merely speculated whether it was possible in her stepson's case. She had a favorable opinion of Banks' reputation before Milum raised the topic, but afterward she had a "seed of doubt in [her] mind as a result of the content of the website" and of his comments to her. She was not "pleasantly surprised" at the sentence Banks obtained for her stepson to the point that she suspected bribery, because, while the result could have been worse, he still served four months in boot camp.

The woman's mother testified she referred Banks to her daughter, who told her that the stepson's troubles cost the family $75,000. She discussed with Milum a conversation she had with someone else who suspected that Banks had bribed a judge, and wondered whether that had happened on her stepson's behalf, but never said she knew personally that money paid to Banks went to bribe a judge.

Milum testified that he was not stating facts when he posted his comments online, but simply giving his opinion. Several of his witnesses testified that Milum had served the county well by uncovering several instances of public corruption. None of the witnesses, however, testified that they personally knew anything about Banks bribing anyone. After deliberating for two days, the jury awarded Banks $50,000 in general damages, but no punitive damages. The

trial court denied Milum's motion for a judgment notwithstanding the verdict, and this appeal followed.

Milum enumerates four errors. He contends that the trial court erred (1) by allowing the issue of whether Banks was a public or limited public figure to go to the jury; (2) by denying his motion for judgment notwithstanding the verdict because the court ruled Banks was a limited public figure and the jury later found that the statements were not made with wanton and reckless disregard for the truth; (3) by granting Banks' motion in limine prohibiting Milum from offering testimony about corrupt individuals he had exposed in the county; and (4) by denying his motion for a directed verdict because Banks failed to prove publication.

Libel is "a false and malicious defamation of another, expressed in print, writing, pictures, or signs, tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule." OCGA § 51-5-1 (a). "Libel per se consists of a charge that one is guilty of a crime, dishonesty or immorality. [Cits.]" (Punctuation omitted.) *Eidson v. Berry*, 202 Ga. App. 587, 588 (415 SE2d 16) (1992). "Bribery is such a crime. OCGA § 16-10-2." *Barber v. Perdue*, 194 Ga. App. 287, 288 (390 SE2d 234) (1989).

1. Milum contends that the trial court erred by allowing the issue of whether Banks was a public or limited public figure to go to the jury. Generally, the trial court determines this issue as a matter of law, *Mathis v. Cannon*, 276 Ga. 16, 23 (3) (573 SE2d 376) (2002), and here the trial court ruled at the beginning of the trial that Banks was a limited or semi-public figure. As a public figure rather than a private one, Banks was required to show by clear and convincing evidence that Milum "published false and defamatory statements knowing that they were false or acting in reckless disregard of their truth or falsity." Id. at 25.

At the close of the plaintiff's evidence, Milum moved for a directed verdict as to whether Banks was a public figure, and the trial court noted it had already ruled he was a limited public figure, despite Banks' objections he was a private figure. Milum argued that Banks had not shown by clear and convincing evidence that he had acted with actual malice or reckless disregard for the truth, and the trial court denied the motion.

The court then stated that it would "charge the jury on the various elements of a public figure and such matters as that, and then they'll make the decision." Milum made no objection to the court's proposal to charge the jury on the elements of a public figure, and in fact submitted a jury charge defining "public figure" as follows: "Now, I charge you that a 'public figure' is one who by reason of notoriety of his achievements or the vigor and success with which he seeks the

public's attention has commanded or is in a position to command a substantial amount of public interest."

At the charge conference, the court said it would give that part of Milum's charge, and Milum did not object then or after the court gave the charge. The only objection Milum raised was to the court's decision not to give the second half of this charge "regarding if the jury finds privilege, the Plaintiff has the burden of showing clear and convincing evidence of actual malice."

When the jury returned the next day for further deliberation, upon its request the court recharged it on the issue of damages and the burden of proof. The jury then asked for clarification on whether someone who is a public figure can be libeled, and the trial court responded by recharging the jury with Milum's charge defining "public figure." When asked for exceptions to the recharge, Milum said, "No new objections from the defense, specifically no objection to the recharge you gave, Your Honor."

Milum cannot now argue that the trial court erred in giving a jury charge that he submitted, which correctly stated the law. "A party cannot complain of error that [his] own legal strategy, trial procedure, or conduct aided in causing. [Cits.]" (Punctuation omitted.) *Sharpe v. Dept. of Transp.*, 270 Ga. 101, 103 (505 SE2d 473) (1998). While he argues in his brief that his submission of this charge was not invited error because the court had already stated it was going to send the issue to the jury, Milum did not object to the issue going to the jury; he simply objected to the court's denial of his motion for a directed verdict on the issue of malice. "Even specific exceptions or objections to charges must be expressed with sufficient clarity to enable a trial court to ascertain promptly the precise nature of the asserted error, and thus be afforded a meaningful opportunity to take timely and effective corrective action if warranted." *Delaney v. Lakeside Villa, Ltd.*, 210 Ga. App. 430 (2) (440 SE2d 668) (1993). Thus we find no merit to Milum's first enumeration of error.

2. Milum next asserts that the trial court erred by denying his motion for judgment notwithstanding the verdict because the court ruled Banks was a limited public figure and the jury later found that Milum's statements were not made with wanton and reckless disregard for the truth. Basically, he argues that Banks failed to prove malice and that the jury verdict was inconsistent.

Milum never objected to the form of the verdict, which Banks attached to the parties' consolidated pre-trial order which the trial court signed. The verdict form allowed the jury first to find either for Banks in an amount they would fill in or for Milum. Then, if the jury found for Banks, as it did in the amount of $50,000, the jury would answer the following question:

> Does the jury find that Defendant David Milum acted with such a wanton and reckless disregard for the truth of the statements at issue, or with such a conscious indifference of the rights of another (here, Plaintiff Rafe Banks, III) that an award of punitive damages should be awarded against defendant David Milum?

To that question the jury answered no, and thus did not answer the fourth question, "If the answer to 'C' is yes, did Defendant David Milum act with an intent to injure or harm Plaintiff Rafe Banks, III?"

Milum asserts on appeal that these two findings are inconsistent in awarding Banks $50,000 but not finding that he acted with malice, because as a limited public figure, the jury had to find he acted with malice.

> Though this may be a possible interpretation of the verdict, where a verdict is ambiguous and susceptible of two constructions, one of which would uphold it and one of which would defeat it, it will not on this account be set aside, but will be given a construction which will uphold it. Further, any inconsistency in the verdict should be harmonized or avoided if reasonably possible without destroying the whole.

(Citations and punctuation omitted.) *Colonial Stores v. Fishel*, 160 Ga. App. 739, 742 (1) (b) (288 SE2d 21) (1981). In this case, the question asked on the form was not whether Milum acted with *any* malice, but with *such* malice that he should pay punitive damages. Thus, the jury could have found that Banks was a limited public figure and that Milum acted with enough malice to award compensatory damages, but not enough to warrant punitive damages.

If the verdict form is unclear, Milum's remedy was to seek a special interrogatory to the jury, which he did not do, or to submit his own verdict form per OCGA § 9-11-49, or at the least to object to the form used, none of which he did. "[I]n the absence of a specific and timely objection, a party waives error relating to the manner in which questions are submitted to the jury." (Emphasis omitted.) *Frostgate Warehouses v. Cole*, 244 Ga. 782, 783 (262 SE2d 98) (1979). Thus we cannot conclude that the trial court erred in denying his motion for judgment notwithstanding the verdict on this ground.

3. Milum contends that the trial court erred by granting Banks' motion in limine prohibiting Milum from offering testimony about corrupt individuals he had exposed in the county. Testimony about the corrupt individuals he had identified, he argues, was relevant to his claim that he was acting pursuant to a private duty, which is a defense to libel. The trial court held that Milum could introduce

evidence that he was a whistle blower fighting against corruption in his county, but could not discuss in detail specific instances of corruption or alleged corruption against anyone not involved in the statements at issue here. Milum testified about his role as a whistle blower, and a witness testified that Milum had performed a public service to the community in that regard.

We review evidentiary rulings for abuse of discretion. "Questions of relevance are generally matters within the trial court's discretion, and it is not error to exclude evidence that is not related to an issue at trial." (Citations omitted.) *Ray v. Ford Motor Co.*, 237 Ga. App. 316, 317 (1) (514 SE2d 227) (1999). In this case, the issue was whether Milum libeled Banks, not whether Milum had ever been successful in uncovering corruption against other people. He was allowed to present evidence regarding his private whistle blower role, just not evidence about the specific people he had targeted, and the jury was charged regarding the defense of private duty. We find no abuse of discretion in the trial court's ruling.

4. Milum asserts that the trial court erred by denying his motion for a directed verdict because Banks failed to prove publication.

> When reviewing a trial court's denial of a motion for a directed verdict, appellate courts must review and resolve the evidence and any doubt or ambiguity in favor of the verdict. A directed verdict is not proper unless there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, demands a certain verdict.

(Citation, punctuation and emphasis omitted.) *Lake Park Post v. Farmer,* 264 Ga. App. 299 (1) (590 SE2d 254) (2003). Publication is essential to prove libel. OCGA § 51-5-1 (b). "Newspaper libel" is

> defined in [OCGA § 51-5-2 as] the printing therein of libelous matter. But it places as a condition precedent to suing therefor that it be published. Here enters the troublesome question of whether in addition to placing it available for public view there must be proof that it was actually read. We think that whether or not it is read is immaterial once it is shown that it was exposed to public view.

*Rives v. Atlanta Newspapers*, 220 Ga. 485, 487-488 (139 SE2d 395) (1964) (newspaper publication constitutes one libelous action, not separate actions for each reader).

In considering whether a plaintiff had to seek retraction of a libelous statement published on an Internet message board before

obtaining punitive damages, the Supreme Court of Georgia construed "publication" as defined in the retraction statute, OCGA § 51-5-11, to include messages posted on an Internet bulletin board, and held that this definition applied to all use of the word "publication" in all libel statutes. *Mathis v. Cannon*, supra, 276 Ga. at 28 (4). Thus, Milum "published" these statements when he posted them on his website.

Further, Milum testified that his website had sustained about half a million visits altogether, and he admitted that Plaintiff's Exhibit 3, which repeated the bribery allegation, was his response to a message posted on his website asking about his first comment concerning Banks. This evidence did not demand a verdict for Milum, and thus the trial court did not err in denying his motion for a directed verdict.

*Judgment affirmed. Andrews, P. J., and Bernes, J., concur.*

DECIDED MARCH 5, 2007 —

*Woodard & Butler, B. Ray Woodard, Jeffrey M. Butler*, for appellant.

*Myles E. Eastwood*, for appellee.