A07A2168. DeGOLYER et al. v. GREEN TREE SERVICING, LLC.
(662 SE2d 141)

BLACKBURN, Presiding Judge.

Green Tree Servicing, LLC ("Green Tree"), filed this equity action against Carliss DeGolyer, individually and as executrix of the estate of Troy DeGolyer (her late husband), and Two Eagles, Inc. (collectively "defendants"), seeking the reformation of a security deed, a declaratory judgment granting that security deed first priority, and rescission of a separate deed under power ("foreclosure deed"). Following a jury trial, the trial court directed a verdict in favor of Green Tree on all of its claims. Defendants appeal, arguing that the trial court erred in directing the verdict in favor of Green Tree on its claims for reformation of the security deed, equitable subrogation, and rescission of the foreclosure deed; in directing the verdict in favor of Green Tree on defendants' wrongful foreclosure claim; and in ruling in favor of Green Tree on several evidentiary issues. For the reasons set forth below, we affirm in part and reverse in part.

A directed verdict is proper only if there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict. OCGA § 9-11-50 (a). In determining whether any conflict in the evidence exists, the court must construe the evidence most favorably to the party opposing the motion for directed verdict. The standard used to review the grant or denial of a directed verdict is the any evidence test.

(Punctuation omitted.) *Moran v. Kia Motors America.*[1]

So viewed, the record shows that in January 1990, Troy and Carliss DeGolyer purchased a 6.94-acre tract of land in Union County with help from a loan obtained from Appalachian Community Bank ("ACB") that used the property as security. In July 1995, Two Eagles, Inc., a corporation wholly owned and operated by the DeGolyers, purchased an adjacent 22.5-acre tract of property, upon which was a house that eventually became the DeGolyers' residence. In August 2000, Two Eagles obtained a second loan from ACB to make improvements on the 22.5-acre tract and used that tract as the collateral to execute a security deed in favor of ACB.

Approximately one year later, the DeGolyers began negotiating with Conseco Finance Servicing ("Conseco") to refinance the loan pertaining to the 22.5-acre tract. During the negotiations, the DeGolyers had the 22.5-acre tract surveyed so as to divide the property into two parcels, one of which was a five-acre tract that included the DeGolyers' home and would be used as security for the loan. Although the DeGolyers informed Conseco that Two Eagles held the title to the entire 22.5-acre tract, Conseco assumed that Two Eagles would convey title to the DeGolyers; thus, all of the loan documents designated the DeGolyers as the borrowers and signators. In addition, all of the loan documents, including the note and the security deed for the five-acre parcel, were signed by the DeGolyers as individuals and not in their capacity as officers of Two Eagles. The loan documents also included an attachment to the security deed, which consisted of a legal description of the five-acre parcel that would serve as security for the loan. The closing for the loan, which the DeGolyers attended, took place in July 2001, after which the ACB loan was paid and ACB's security deed for the 22.5-acre tract was cancelled.

In 2002, Conseco filed for bankruptcy. When it emerged in early 2003, the division of the company responsible for servicing loans, including the DeGolyers' loan, was acquired by another company and changed its name to Green Tree Servicing. That same year, the DeGolyers defaulted on what was formerly the Conseco loan. As a consequence, Green Tree began foreclosure proceedings but in doing so learned that the security deed for the loan had never been recorded. Green Tree immediately contacted the title company that had assisted in the closing and had the security deed recorded. However, as recorded, the deed did not include the attachment of the legal description of the five-acre tract, which had been originally included in the loan documents executed by the DeGolyers in 2001.

---

[1] *Moran v. Kia Motors America*, 276 Ga. App. 96 (622 SE2d 439) (2005).

With no legal description of the five-acre parcel to use as a guide, Green Tree mistakenly began foreclosing on the DeGolyers' 6.94-acre tract, which had never been the collateral for the Green Tree loan and in fact was encumbered by a separate security deed to ACB. Upon learning that Green Tree was foreclosing on the wrong piece of property, the DeGolyers informed Green Tree of its error. In addition, an employee of ACB, who saw the foreclosure notice for the DeGolyers' 6.94-acre tract, also contacted Green Tree to inform it that it was foreclosing on the wrong property. Nevertheless, in October 2003, Green Tree foreclosed on the 6.94-acre tract, purchased the property at foreclosure, and recorded a deed under power of sale. Thereafter, Green Tree contacted the DeGolyers to demand possession of the property. In response, counsel for the DeGolyers informed Green Tree of its mistake in foreclosing on the 6.94-acre tract as opposed to the five-acre tract, to which Two Eagles held title. Once it received this information, Green Tree revoked its demand for possession and began its own investigation into the error. Subsequently, Green Tree learned that its security deed, as recorded, did not include the legal description of the property, and that Two Eagles had never conveyed the five-acre tract to the DeGolyers.

Pursuant to a compliance agreement contained in the loan documents, Green Tree requested the DeGolyers' assistance in correcting the errors related to the security deed. When the DeGolyers refused to cooperate, Green Tree filed suit, seeking to reform the security deed by attaching the correct legal description of the five-acre tract to the security deed of record and by requiring Two Eagles to convey the property to either Green Tree or the DeGolyers. Green Tree also sought a declaration that its security deed had first priority as to the five-acre tract, an equitable subrogation as an alternative to reformation, and a rescission of the deed under power for the 6.94-acre tract. The DeGolyers filed an answer and a counterclaim for wrongful foreclosure, alleging damages based on (i) their inability to sell the 6.94-acre tract due to the cloud on the title and (ii) intentional infliction of emotional distress.

The case was tried before a jury, but at the close of the evidence, the trial court granted Green Tree's motion for directed verdict as to its claims and as to the DeGolyers' counterclaim for wrongful foreclosure. Shortly thereafter, the trial court issued a final judgment and decree in favor of Green Tree. Defendants[2] filed a motion for new trial, which was denied. This appeal followed.

1. Defendants contend that the trial court erred in granting a directed verdict in favor of Green Tree as to its claims for a

---

[2] Troy DeGolyer had passed away prior to trial.

reformation of the security deed and a declaration that its security deed had first priority against the Two Eagles five-acre tract. We disagree. "In all cases where the form of the conveyance or instrument is, by mutual mistake, contrary to the intention of the parties in their contract, equity will interfere to make it conform thereto." (Punctuation omitted.) *Aames Funding Corp. v. Henderson.*[3] See *Curry v. Curry*;[4] OCGA § 23-2-25. "The cause of the defect is immaterial so long as the mistake is common to both parties to the transaction. And the negligence of the complaining party will not defeat his right to reformation if the other party has not been prejudiced." (Punctuation omitted.) *Zaimis v. Sharis.*[5] "A mistake relievable in equity is some unintentional act, omission, or error arising from ignorance." (Punctuation omitted.) *Aames Funding Corp.*, supra, 275 Ga. App. at 325. See OCGA § 23-2-21 (a).

Here, it is undisputed that both the DeGolyers and Green Tree intended for the five-acre tract of property to be the subject of the security deed and the collateral for the Green Tree loan. Thus, the failure to have Two Eagles either convey the tract to the DeGolyers, or be included as a signatory on the loan documents, and the failure to attach the legal description of the property to the security deed when it was recorded, constituted a mutual mistake that was relievable in equity. See *Aames Funding Corp.*, supra, 275 Ga. App. at 325. Furthermore, the DeGolyers have not suffered any prejudice, as they received a loan for $292,500, as promised, and used part of that loan to satisfy the earlier loan from ACB relating to that property. Nor have defendants shown that they will suffer any prejudice if the deed is reformed. In addition, the reformation of the security deed relates back to the date of the execution, and therefore Green Tree's security interest has priority over any interest that may have been obtained afterward. See id. at 326; *Chapman v. Cassels Co.*[6] Accordingly, the trial court did not err in directing a verdict in favor of Green Tree as to its claims for reformation of the security deed and for a declaratory judgment that the security deed had first priority. See *Montana v. Blount*[7] ("A party has no statutory or constitutional right to a trial by jury in an equity action.").

2. Defendants contend that the trial court erred in directing a verdict in favor of Green Tree on its alternative claim for equitable subrogation. However, given our holding in Division 1, supra, this issue is moot and need not be addressed.

---

[3] *Aames Funding Corp. v. Henderson*, 275 Ga. App. 323, 324 (620 SE2d 503) (2005).
[4] *Curry v. Curry*, 267 Ga. 66, 67 (1) (473 SE2d 760) (1996).
[5] *Zaimis v. Sharis*, 275 Ga. 532, 533 (1) (570 SE2d 313) (2002).
[6] *Chapman v. Cassels Co.*, 180 Ga. 349, 354 (2) (179 SE 91) (1935).
[7] *Montana v. Blount*, 232 Ga. App. 782, 786 (1) (b) (504 SE2d 447) (1998).

3. Defendants contend that the trial court erred in directing a verdict in favor of Green Tree as to its claim for rescission and cancellation of the deed it obtained when it mistakenly foreclosed on the DeGolyers' 6.94-acre tract of property. We disagree. Georgia law "provides for rescission and cancellation upon the ground of mistake of fact material to the contract of one party only." (Punctuation omitted.) *First Baptist Church of Moultrie v. Barber Contracting Co.*[8] See OCGA § 23-2-31. "[R]elief will be granted even in cases of negligence if the opposing party will not be prejudiced." *First Baptist Church of Moultrie*, supra, 189 Ga. App. at 807. See OCGA § 23-2-32.

Here, as previously noted, both the DeGolyers and Green Tree intended for the five-acre tract of property to be the collateral for the security deed. In fact, neither party disputes the fact that the security deed makes no reference at all to the 6.94-acre tract owned by the DeGolyers. Thus, when Green Tree obtained the deed to the 6.94-acre tract by foreclosing on that property pursuant to its security deed, it did so as the result of the mutual mistake contained in the security deed. Furthermore, defendants have failed to show that they would be prejudiced by a rescission and cancellation of the foreclosure deed. Accordingly, the trial court did not err in directing a verdict in favor of Green Tree on its claim for rescission and cancellation of the foreclosure deed to the DeGolyers' 6.94-acre tract. See *Montana*, supra, 232 Ga. App. at 786 (1) (b); *First Baptist Church of Moultrie*, supra, 189 Ga. App. at 807.

4. Defendants further contend that the trial court erred in directing a verdict in favor of Green Tree on their counterclaim for wrongful foreclosure. Where a grantee does not comply with the statutory duty under OCGA § 23-2-114 to exercise fairly the power of sale in a deed to secure debt, the debtor may sue for damages for the tort of wrongful foreclosure. *Calhoun First Nat. Bank v. Dickens.*[9] "Georgia law requires a plaintiff asserting a claim of wrongful foreclosure to establish a legal duty owed to it by the foreclosing party, a breach of that duty, a causal connection between the breach of that duty and the injury it sustained, and damages." *Heritage Creek Dev. Corp. v. Colonial Bank.*[10] See *Calhoun First Nat. Bank*, supra, 264 Ga. at 286 (2).

In this matter, although there is no doubt that Green Tree foreclosed upon the wrong tract of property, Green Tree argues, and the trial court agreed, that it cannot possibly be liable for wrongful

---

[8] *First Baptist Church of Moultrie v. Barber Contracting Co.*, 189 Ga. App. 804, 807 (377 SE2d 717) (1989).

[9] *Calhoun First Nat. Bank v. Dickens*, 264 Ga. 285 (1) (443 SE2d 837) (1994).

[10] *Heritage Creek Dev. Corp. v. Colonial Bank*, 268 Ga. App. 369, 371 (1) (601 SE2d 842) (2004).

foreclosure under OCGA § 23-2-114 because it never had any legal interest in the DeGolyers' 6.94-acre tract, and therefore the foreclosure and subsequent sale of that property were void. In sum, Green Tree reasons that since it never had a valid power to sell the 6.94-acre tract whatsoever, it could not, as a matter of law, have exercised that power unfairly. However, we disagree that a claim for wrongful foreclosure can only be established on such narrow grounds. "A claim for wrongful exercise of a power of sale under OCGA § 23-2-114 can arise when the creditor has no legal right to foreclose." *Brown v. Freedman*.[11] See *Rapps v. PHH US Mtg. Corp.*[12] (appellant allowed to maintain a wrongful foreclosure claim based on allegations that appellee had altered deed so that it could foreclose on property that was never subject to the deed). Thus, the trial court erred in ruling that Green Tree's lack of a legal interest in the 6.94-acre tract barred a wrongful foreclosure claim.

Furthermore, although we agree with the trial court's finding that defendants failed to demonstrate that the wrongful foreclosure interfered with any attempted sale of the 6.94-acre tract or other damages directly related to the property, we disagree with the trial court's finding that defendants failed to demonstrate any mental anguish damages as a matter of law. "In a wrongful foreclosure action, an injured party may seek damages for mental anguish in addition to cancellation of the foreclosure." *Blanton v. Duru*.[13] See *Clark v. West*.[14] "[S]uch action for damages for emotional distress is treated as an action for intentional infliction of emotional distress, and the burden that plaintiff must meet is a stringent one in order to prevail." *McCarter v. Bankers Trust Co.*[15] "[I]ntentional conduct to cause harm is an essential element of such action." Id.

Here, both Carliss DeGolyer and a former employee of ACB testified that they informed Green Tree that it was foreclosing on the wrong tract of property. Given this testimony and the fact that Green Tree nevertheless proceeded with foreclosure despite the lack of any legal description of the property attached to its security deed, defendants presented evidence that would allow a jury to infer that Green Tree's conduct intentionally, or at least recklessly, caused harm. See *Amstead v. McFarland*[16] (to prove a claim for intentional

---

[11] *Brown v. Freedman*, 222 Ga. App. 213, 214 (1) (474 SE2d 73) (1996).

[12] *Rapps v. PHH US Mtg. Corp.*, 220 Ga. App. 602, 603 (2) (469 SE2d 731) (1996).

[13] *Blanton v. Duru*, 247 Ga. App. 175, 178-179 (5) (543 SE2d 448) (2000).

[14] *Clark v. West*, 196 Ga. App. 456, 457 (a) (395 SE2d 884) (1990) (physical precedent only).

[15] *McCarter v. Bankers Trust Co.*, 247 Ga. App. 129, 133 (2) (543 SE2d 755) (2000).

[16] *Amstead v. McFarland*, 287 Ga. App. 135, 140 (4) (650 SE2d 737) (2007).

infliction of emotional distress, appellant must prove that appellee's conduct was intentional or reckless).

We further disagree with the trial court's determination that Green Tree's wrongful foreclosure did not constitute extreme or outrageous conduct as a matter of law. Indeed, evidence of such conduct can support a claim for mental anguish damages. See *Blanton*, supra, 247 Ga. App. at 179 (5); *Clark*, supra, 196 Ga. App. at 457 (a). Compare *Ingram v. JIK Realty Co.*[17] (trial court properly found that appellee's attempt to wrongfully foreclose was not extremely outrageous given some evidence that appellee's security interest in the property had not been validly extinguished). Accordingly, the trial court erred in directing a verdict in favor of Green Tree on defendants' wrongful foreclosure counterclaim, and we hereby reverse that part of the trial court's ruling.

5. In their final enumeration of error, defendants contend that the trial court abused its discretion by ruling in favor of Green Tree on several evidentiary issues. This court reviews evidentiary rulings for abuse of discretion. *Milum v. Banks*.[18] With this standard of review in mind, we turn to defendants' specific contentions.

(a) Defendants first contend that the trial court abused its discretion by admitting an appraisal of the value of the five-acre tract of property that was intended as the collateral for Green Tree's loan and as the subject of its security deed, arguing that the appraisal constituted inadmissible hearsay. Appraisals are not admissible as business records under OCGA § 24-3-14, as such represent the opinion of the appraiser and thus constitute hearsay. *Dickens v. Calhoun First Nat. Bank*.[19] However, the appraisal that Green Tree introduced into evidence showed a value of the property that was nearly identical to the value indicated in the original Conseco loan application that was signed by the DeGolyers, and which was properly admitted into evidence without objection. The admission of hearsay is harmless when it is cumulative of legally admissible evidence showing the same fact. *Smith v. Stacey*.[20] Thus, the trial court's admission of Green Tree's appraisal of the five-acre tract was harmless and did not constitute reversible error.

(b) Defendants contend that the trial court abused its discretion in allowing Green Tree's expert to offer speculative testimony. At trial, Green Tree's counsel asked Green Tree's real estate expert what the DeGolyers should have done if they wanted to sell their

---

[17] *Ingram v. JIK Realty Co.*, 199 Ga. App. 335, 337 (1) (404 SE2d 802) (1991).

[18] *Milum v. Banks*, 283 Ga. App. 864, 871 (3) (642 SE2d 892) (2007).

[19] *Dickens v. Calhoun First Nat. Bank*, 214 Ga. App. 490, 491 (1) (448 SE2d 237) (1994).

[20] *Smith v. Stacey*, 281 Ga. 601-602 (1) (642 SE2d 28) (2007).

6.94-acre tract free from any cloud on the title caused by Green Tree's mistaken attempt to foreclose on that property. Defendants' counsel objected, but the court overruled the objection and allowed the expert to answer. We find no error.

"The admissibility of expert testimony falls within the sound discretion of the trial court." *Sims v. Heath*.[21] "[T]he appropriate standard for assessing the admissibility of the opinion of [Green Tree's] expert is not whether it is speculative or conjectural to some degree, but whether it is wholly so." *Layfield v. Dept. of Transp.*[22] Here, Green Tree's expert was qualified by the trial court to provide testimony concerning real estate transactions and title to property; therefore, her testimony as to how the DeGolyers could have remedied any cloud on their title to the 6.94-acre tract was competent and proper. Any objection to the speculation of the expert's opinion goes to the testimony's weight, not its admissibility. See *Sims*, supra, 258 Ga. App. at 682 (1). Accordingly, the trial court did not abuse its discretion by allowing such testimony.

(c) Defendants contend that the trial court abused its discretion by allowing Green Tree's expert to render opinions on the ultimate issues in the case in two separate instances. In the first instance, counsel for Green Tree asked Green Tree's expert if she had an opinion regarding whether the deed to the 6.94-acre tract obtained by Green Tree after the mistaken foreclosure was enforceable. Defendants' counsel objected, but the court allowed the expert to answer. In the second instance, Green Tree's expert was asked by counsel whether a corporation in possession of a deed must make an assignment of that deed if the corporation later changes its name. Again, the trial court overruled an objection by defendants' counsel and allowed the expert to answer. Defendants argue that in both instances, the expert's testimony improperly invaded the province of the jury. However, even if Green Tree's expert testified on ultimate issues, "expert opinion testimony, even on the ultimate issue to be decided by the jury, is admissible if the expert's conclusion is beyond the ken of the average layperson." (Punctuation omitted.) *Thurman v. Applebrook Country Dayschool*.[23] Here, complicated matters concerning the enforceability of foreclosure deeds, under these circumstances, and corporate assignments of security deeds were not within the ken of the average juror. See id. Thus, the trial court did not abuse its discretion by allowing Green Tree's expert to testify regarding these issues.

---

[21] *Sims v. Heath*, 258 Ga. App. 681, 682 (1) (577 SE2d 789) (2002).
[22] *Layfield v. Dept. of Transp.*, 280 Ga. 848, 850 (1) (632 SE2d 135) (2006).
[23] *Thurman v. Applebrook Country Dayschool*, 278 Ga. 784, 787 (2) (604 SE2d 832) (2004).

(d) Defendants contend that the trial court abused its discretion by admitting a copy of the security deed that included the legal description of the subject property instead of a copy of the deed without the attachment, as it was actually recorded, and thus violated the evidentiary rule regarding admission of copies of recorded instruments. See *Fletcher v. Fletcher*.[24] This argument is misplaced.

At Carliss DeGolyer's deposition prior to trial, counsel for Green Tree showed her a copy of the security deed that included the legal description of the property and had her verify that the documents (designated as Exhibit 5) were true and correct copies of the documents that she and her husband signed at the closing. At trial both Exhibit 5 and a copy of the security deed as it was actually recorded (Exhibit 5A) were admitted into evidence in support of Green Tree's argument that the failure to include a legal description of the property with the recorded deed was a mistake. Thus, in introducing Exhibit 5, Green Tree was not attempting to circumvent the evidentiary rule regarding admission of copies of recorded instruments. Moreover, even if we were to assume that the trial court erred by admitting Exhibit 5, "it is the responsibility of the [defendants] to show *harm* as well as error." (Emphasis in original.) *Layfield v. Southeastern Constr. Coordinators*.[25] Defendants have not demonstrated, nor even argued, that they were harmed by the admission of these documents. In fact, defendants have acknowledged that Exhibit 5 reflected the intent of both parties to have the five-acre tract serve as the collateral for the Green Tree loan. Consequently, the trial court did not commit reversible error by allowing Exhibit 5 into evidence.

(e) Defendants further contend that the trial court abused its discretion by mis-applying the best evidence rule to exclude from evidence a copy of a contract for the sale of the 6.94-acre tract. We disagree.

> The best evidence rule generally requires production of the original of a writing, as primary evidence, rather than a photostatic copy, as secondary evidence, unless the original is shown to be unavailable for some reason other than the serious fault of the proponent.

---

[24] *Fletcher v. Fletcher*, 242 Ga. 158, 161 (6) (249 SE2d 530) (1978).
[25] *Layfield v. Southeastern Constr. Coordinators*, 229 Ga. App. 71, 73 (2) (492 SE2d 921) (1997).

*Harper v. Copelco Capital*.[26] In other words, "secondary evidence may not be admitted unless it shall appear that the primary evidence for some sufficient cause is not accessible to the diligence of the party." (Punctuation omitted.) Id. See OCGA § 24-5-2. "[Q]uestions of inaccessibility of primary evidence and diligence of the party are determinations within the discretion of the trial court. . . ." *Harper*, supra, 249 Ga. App. at 455-456 (1) (c).

In this matter, during Carliss DeGolyer's testimony, her counsel attempted to introduce a copy of a contract between the DeGolyers and Carliss DeGolyer's aunt for the sale of part of the 6.94-acre tract upon which Green Tree mistakenly foreclosed. Green Tree's counsel objected on the ground that the copy was not the best evidence, and the trial court sustained that objection in light of Carliss DeGolyer's testimony that she had the original contract at her home. After a recess, Carliss DeGolyer testified that she was unable to locate the original contract at her home but thought that her aunt might have it. However, her aunt later testified that she did not have the original contract but believed that she mailed it back to the DeGolyers. Consequently, the trial court again sustained Green Tree's objection to the contract. Under these circumstances, the trial court did not abuse its discretion by finding that defendants had failed to account for the original sales contract's absence and by excluding the copy of the contract on the ground that it did not constitute the best evidence. See *Mitchell v. Backus Cadillac-Pontiac*;[27] *McCarter v. La Hacienda Condo. Assn.*[28]

In summary, we affirm the trial court's directed verdict in favor of Green Tree as to its claims for a reformation of the security deed, a declaration that its security deed had first priority as to the five-acre tract, and a rescission of the foreclosure deed relating to the 6.94-acre tract. We also affirm the trial court's evidentiary rulings in favor of Green Tree. However, we reverse the trial court's directed verdict in favor of Green Tree as to the defendants' wrongful foreclosure claim.

*Judgment affirmed in part and reversed in part. Miller and Ellington, JJ., concur.*

DECIDED APRIL 18, 2008 —
RECONSIDERATION DENIED MAY 9, 2008 ▮

*Wesley Williams*, for appellants.

---

[26] *Harper v. Copelco Capital*, 249 Ga. App. 453, 455 (1) (c) (548 SE2d 53) (2001).

[27] *Mitchell v. Backus Cadillac-Pontiac*, 274 Ga. App. 330, 337 (4) (618 SE2d 87) (2005).

[28] *McCarter v. La Hacienda Condo. Assn.*, 255 Ga. App. 68, 69 (1) (564 SE2d 483) (2002).

*Heyman & Sizemore, William B. Brown, Jacqueline Marcucci, Douglas N. Campbell, Ann M. Vaughan,* for appellee.