**SECOND DIVISION
MILLER, P. J.,
MERCIER and COOMER, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

***DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.***

**August 12, 2020**

# In the Court of Appeals of Georgia

A20A1084. JPMORGAN CHASE BANK, N. A. v. DELPIANO et al.

MERCIER, Judge.

JPMorgan Chase Bank, N. A. ("JPMorgan") sued Daniel DelPiano and the United States of America (collectively, "the defendants") for equitable reformation of a security deed relating to real property owned by DelPiano. It also sought a declaratory judgment regarding the validity and priority of the deed. Following discovery, the parties filed cross-motions for summary judgment. The trial court denied JPMorgan's motions and granted summary judgment to the defendants, finding that the seven-year statute of limitation applicable to an equitable reformation claim barred JPMorgan's suit. Because the defendants were not entitled to judgment as a matter of law on statute of limitation grounds, we reverse the trial court's order

to the extent it granted summary judgment to the defendants, vacate the denial of JPMorgan's motions for summary judgment, and remand the case for further proceedings.

Summary judgment is appropriate when the evidence, viewed most favorably to the non-movant, demonstrates that no genuine issues of material fact remain and the movant is entitled to judgment as a matter of law. See *Occidental Fire & Cas. of N. C. v. Goodman*, 339 Ga. App. 427 (793 SE2d 606) (2016). So viewed, the record shows that in 2004, DelPiano and his wife Pamela decided to buy a home in Alpharetta ("the property") for $3.3 million. The property was purchased in Pamela's name, and she took out a $2.64 million loan from Washington Mutual Bank ("WaMu") to finance the transaction.

At the closing in March 2005, Pamela executed the necessary loan documents, including an adjustable rate note, through which she promised to repay the loan, and a security deed granting WaMu a security interest in the property. Pamela's signature on the security deed was notarized by the closing attorney. Signature lines for an "unofficial" witness, however, were inadvertently left blank during the transaction. As subsequently described by the closing attorney:

2

Although I was not aware at the time of Closing or its recording in deed records, the Security Deed which [Pamela] and I both executed, did not contain the signature of an unofficial witness. . . . The omission of the signature of an unofficial witness on the Security Deed was a clerical mistake. As the closing attorney, it was my job to ensure that the documents were properly executed, but I made the mistake of allowing the Closing to conclude before having the unofficial witness sign the Security Deed.

Despite the missing signature, the closing attorney recorded the security deed in the Fulton County deed records on April 1, 2005. Pamela began making monthly payments on the WaMu loan, but she stopped paying in March 2006, and the loan went into default.

DelPiano and Pamela divorced in May 2008. Pursuant to the parties' divorce settlement, DelPiano assumed sole responsibility for the outstanding balance of the loan, and Pamela quit-claimed her interest in the property to DelPiano in 2010. DelPiano, however, made no payments on the loan following the divorce.

WaMu owned the adjustable rate promissory note and related security deed until 2008, when WaMu was acquired by the Federal Deposit Insurance Company ("FDIC"). On September 25, 2008, the FDIC sold WaMu's assets, including the note and security deed, to JPMorgan. According to JPMorgan, it discovered the missing

signature on the security deed in 2011, through discussions with the bank's foreclosure counsel.

In 2015, a document assigning the FDIC's interest in the security deed to JPMorgan was recorded in the Fulton County deed records. Approximately one year later, on May 17, 2016, JPMorgan filed the instant action, seeking "to correct the inadvertent attestation omission" in the security deed and to obtain a declaration that the security deed "is valid, enforceable, and occupies a first priority security interest and lien position on the [p]roperty[.]" JPMorgan named several defendants, including DelPiano (the property owner) and the United States of America (on behalf of the Department of Justice), which had filed restitution liens on the property relating to criminal proceedings against DelPiano.[1] Those restitution liens, however, were filed *after* April 1, 2005, when the security deed was recorded.

JPMorgan and the defendants filed cross-motions for summary judgment, with the defendants raising, among other things, a statute of limitation defense. The trial court agreed with the defendants that JPMorgan's equitable reformation claim was time-barred. It thus granted summary judgment to the defendants on that claim, as

---

[1] The other named defendants are not part of this appeal.

4

well as JPMorgan's related request for a declaratory judgment, and denied JPMorgan's motions for summary judgment. This appeal followed.

1. Without dispute, the security deed filed with respect to the property on April 1, 2005, lacked the signature of an unofficial witness, rendering it "ineligible for recording." *Wells Fargo Bank, N. A. v. Gordon*, 292 Ga. 474, 475 (1) (749 SE2d 368) (2013). See also OCGA § 44-14-33 (2005) ("In order to admit a mortgage to record, it must be attested by or acknowledged before an officer . . . ; and, in the case of real property, a mortgage must also be attested or acknowledged by one additional witness."); OCGA § 44-14-61 (2005) ("In order to admit deeds to secure debt or bills of sale to record, they shall be attested or proved in the manner prescribed by law for mortgages."). Although the county clerk accepted the deed for recording, it was facially defective, not in "recordable form," and did not provide "constructive notice to . . . subsequent bona fide purchasers." *Gordon*, supra. JPMorgan thus seeks equitable relief to reform the deed by correcting the inadvertent clerical error committed by the closing attorney. See *DeGolyer v. Green Tree Servicing*, 291 Ga. App. 444, 447 (1) (662 SE2d 141) (2008) ("In all cases where the form of the conveyance or instrument is, by mutual mistake, contrary to the intention of the parties in their contract, equity will interfere to make it conform thereto." (citations

5

and punctuation omitted)); OCGA § 23-2-21 (a) ("A mistake relievable in equity is some unintentional act, omission, or error arising from ignorance, surprise, imposition, or misplaced confidence.").

Generally, a suit to reform a written document based upon a mutual mistake must be filed within seven years from the date the mistake was or, in the exercise of reasonable diligence, should have been discovered. See *Haffner v. Davis*, 290 Ga. 753, 756 (3) (725 SE2d 286) (2012). An equitable exception to the statute of limitation exists, however, where reformation would not prejudice the original parties to the document, their privies, or any subsequent bona fide purchasers for value that lacked notice of the mistake. See id. This exception "permits the grant of equitable relief in the form of contract reformation" outside the seven-year period, even if the party seeking reformation failed to exercise reasonable diligence in discovering the mistake. *Ehlers v. Upper West Side*, 292 Ga. 151, 153 (1) (733 SE2d 723) (2012) (citations and punctuation omitted).

The trial court found that JPMorgan (through WaMu, its predecessor in interest) should have discovered the mistake on the face of the security deed as early as 2005, when the deed was executed and recorded. See *Cline Drive Land Trust v. Wells Fargo Bank, N. A.*, 339 Ga. App. 342, 345 (793 SE2d 550) (2016) ("[A]n

6

assignee takes the assignment subject to defenses against the assignor, including the defense of the bar of the statute of limitation.") (citation and punctuation omitted). It thus concluded that the reformation claim, filed well over seven years later, is time-barred. Again, however, the limitation period only bars a reformation claim if a relevant party would be prejudiced by the reformation. Otherwise, the claim falls within the equitable exception to the seven-year statute of limitation. See *Haffner*, supra; *Ehlers*, supra.

The record contains no evidence of prejudice here. DelPiano does not argue that a corrected security deed would prejudice him. And although the United States claims significant prejudice if a reformed deed is allowed to trump its recorded restitution liens, such prejudice is irrelevant. The government was not a party to the defective security deed, in privity with one of those parties, or a bona fide purchaser for value of the secured property. It enjoys no connection to the property other than as a third-party judgment creditor seeking to collect criminal restitution from DelPiano. The equitable exception's prejudice inquiry does not consider prejudice to a judgment creditor such as the United States. Rather, it focuses on the parties to the

defective instrument, their privies, and subsequent bona fide purchasers for value.[2]

See *Haffner*, supra.

Neither DelPiano nor the United States has established the type of prejudice necessary to remove this reformation case from the statute of limitation's equitable exception. Accordingly, the trial court erred in finding that the seven-year limitation period bars JPMorgan's claims as a matter of law. See *Ehlers*, supra at 154 (1).

2. The defendants argue that, regardless of whether the trial court properly granted them summary judgment on statute of limitation grounds, the summary judgment ruling should be affirmed as "right for any reason." See *City of Gainesville v. Dodd*, 275 Ga. 834, 835 (573 SE2d 369) (2002) ("Under the 'right for any reason' rule, an appellate court will affirm a judgment if it is correct for any reason, even if

---

[2] Arguing for an expanded prejudice inquiry, the United States relies heavily on our decision in *Cohen v. Wachovia Mtg. Co.*, 332 Ga. App. 109 (770 SE2d 17) (2015). In *Cohen*, we found that a joint property owner who was not named in a security deed encumbering the property would be prejudiced if the court reformed the security deed to include her as a grantor, particularly given her denial that the parties intended the security deed to cover her property interest. Supra at 112-113 (2). Citing this prejudice, we concluded that the seven-year statute of limitation barred the reformation claim. Id. at 113. The circumstances in this case are entirely different. The United States has no interest in the property other than as a judgment creditor and was not, in any way, part of the transaction that led to the defective security deed.

that reason is different than the reason upon which the trial court relied."). We disagree.

(a) DelPiano challenges JPMorgan's standing to seek judicial relief regarding the security deed, asserting that the bank has not demonstrated that it has an interest in the loan or the adjustable rate promissory note underlying the deed. The record shows, however, that JPMorgan purchased WaMu's assets, including the promissory note secured by the security deed, from the FDIC in 2008. The security deed was subsequently assigned to JPMorgan, and the assignment was recorded in 2015.

DelPiano criticizes JPMorgan for not offering into evidence the actual documents that transferred the promissory note from WaMu to the FDIC to JPMorgan. According to DelPiano, without such evidence, JPMorgan cannot prove that it is entitled to enforce the promissory note under the Uniform Commercial Code. But JPMorgan does not seek to enforce the note at this point. It has asserted an equitable claim to correct a mistake in the security deed and to establish priority of that deed following reformation. DelPiano has not shown that JPMorgan lacks standing to bring this claim. See *Occidental Fire & Cas. of N. C.*, supra at 431 (5) (as the assignee of a contracting party, plaintiff had standing to bring action to equitably reform the written instrument); see also *Ins. Agency of Glynn County v. Atlanta Cas.*

9

*Co.*, 255 Ga. App. 323, 324 (1) (565 SE2d 547) (2002) ("Reformation of written instruments may be had by the immediate parties thereto and by those standing in privity with them, such as their successors." (citation and punctuation omitted)).

(b) The defendants argue that they are entitled to summary judgment on the declaratory judgment claim because (1) JPMorgan's request for a declaration regarding priority of its security deed is not a proper basis for declaratory relief, and (2) JPMorgan should not be able to retroactively perfect a defective security interest. We have previously held, however, that a trial court may equitably reform a recorded but defective security deed and enter a declaration "that the security deed ha[s] first priority[.]" *DeGolyer*, supra. Moreover, reformation of such security deed "relates back to the date of the execution," giving the deed holder "priority over any interest that may have been obtained afterward." Id. The defendants' arguments with respect to JPMorgan's request for declaratory relief, therefore, lack merit.

(c) Both defendants challenge JPMorgan's request that the trial court declare the security deed "equitably subrogated" to the priority position held by mortgage liens that were paid off using the WaMu loan proceeds. The trial court, however, never addressed whether equitable subrogation applies here, resolving the case instead on an erroneous legal theory regarding the statute of limitation. And it is clear

10

that JPMorgan seeks equitable subrogation as an *alternative* to reformation of the security deed, in the event the security deed is not corrected to give the bank a first-priority security interest. See *Chase Manhattan Mtg. Corp. v. Shelton*, 290 Ga. 544, 549 (4) (722 SE2d 743) (2012) (under certain circumstances, doctrine of equitable subrogation will deem that new creditor has same priority as paid-off senior lien creditor if the new creditor's security interest "is for any reason not a first lien on the property"). We decline to address this alternative claim – which may never become an issue in the case – for the first time on appeal. See *Dodd*, supra at 838-839; *Roca Properties v. Dance Hotlanta*, 327 Ga. App. 700, 713-714 (3) (761 SE2d 105) (2014) (declining to address grounds for summary judgment not ruled upon by the trial court).

3. Finally, JP Morgan argues that it was entitled to summary judgment on various grounds. As discussed above, the trial court's summary judgment ruling was based on an erroneous application of the seven-year statute of limitation governing equitable reformation claims. Although the trial court should not have denied JPMorgan's motions for summary judgment on that basis, we will not now address whether the trial court erred in refusing to *grant* the bank's motions on alternative grounds. As we have explained, while an appellate court may determine that a

11

summary judgment ruling was right for a reason other than that given by the trial court, it "should not consider whether the trial court was 'wrong for any reason.'" *Piedmont Hosp. v. D. M.*, 335 Ga. App. 442, 449 (3) (779 SE2d 36) (2015). Accordingly, we vacate the trial court's ruling to the extent it denied JPMorgan's motions for summary judgment and remand the case for consideration of the arguments presented in those motions. See id. On remand, the trial court should also review any arguments raised in the defendants' summary judgment motions that have not been resolved in this opinion.

*Judgment reversed in part and vacated in part, and case remanded with direction. Miller, P. J., and Coomer, J., concur.*

12