**In the Matter of RENT A TENT, INC., Debtor.**

**Stearns Bank, N.A., Plaintiff,**

**v.**

**Rent–A–Tent, Inc., Theo Davis Mann, Trustee, Defendants.**

**Theo Davis Mann, Trustee, Counter–Claimant,**

**v.**

**Stearns Bank, N.A., Counter–Defendant.**

**Bankruptcy No. 08–11639–WHD. Adversary No. 11–1010.**

United States Bankruptcy Court, N.D. Georgia, Newnan Division.

Feb. 17, 2012.

Jeffrey H. Schneider, Weissman, Nowack, Curry & Wilco, P.C., Atlanta, GA, for Plaintiff.

R. Brian Wooldridge, Mann & Wooldridge, Newnan, GA, for Defendant.

### ORDER

W. HOMER DRAKE, JR., Bankruptcy Judge.

Before the Court is the Motion for Summary Judgment, filed by the plaintiff/coun-

terdefendant, Stearns Bank, N.A. (hereinafter the "Plaintiff"). The Plaintiff seeks judgment against Theo Davis Mann (the "Trustee") *on its complaint to determine the extent and validity of its lien against property of the bankruptcy estate of Rent–A–Tent, Inc. (hereinafter the "Debtor").* The Trustee opposes the Motion.

Also before the Court is the Plaintiff's Motion for Oral Argument on the Motion for Summary Judgment. The Court finds that the Motion for Summary Judgment can be resolved on the pleadings, evidence, and briefs filed in the case and that a hearing on the motion would not substantially aid the Court in resolving the motion. Accordingly, the Motion for Oral Argument is hereby **DENIED.**

This matter arises in a core proceeding, over which this Court has subject matter jurisdiction. *See* 28 U.S.C. §§ 157(b)(2)(K); 1334. The following constituted the Court's findings of fact and conclusions of law.

### Findings of Fact

In June and July 2003, the Plaintiff's predecessor, eBank, made two loans to the Debtor. The loans were evidenced by promissory notes in the amount of $513,500 (the "Barnes Note") and $313,000 (the "Antioch Note"). *See* Complaint, Exhibits A and H. James and Melody Gribben (hereinafter the "Gribbens"), the shareholders of the Debtor, guaranteed both loans. Plaintiff's Statement of Undisputed Material Facts, ¶¶ 1 and 9; Trustee's Response to Plaintiff's Statement of Undisputed Material Fact, ¶ 9. At least a portion of the proceeds of the Antioch Note was used to pay off a debt owed to Regions Bank, which was secured by a first priority deed to secure debt on real property located on Antioch Road in Carroll County, Georgia (hereinafter the "Antioch Property").[1] *See* Plaintiff's Statement of Undisputed Facts, ¶ 6.

The Barnes Note is dated July 15, 2003 and lists the Borrower as Rent–A–Tent, Inc. It is signed "By: James P. Gribben, Jr., President of Rent–A–Tent, Inc., and By: Melody F. Gribben." *See* Declaration of Barbara Jones. The Antioch Note is dated June 20, 2003 and lists the Borrower as Rent–A–Tent. The signature of "James P. Gribben" appears on the signature line, which is type-written as "Rent–A–Tent," and the signature of Melody F. Gribben appears on the signature line below. *See id.* The Antioch Note had a term of one year and would have matured on July 1, 2004.[2]

---

1. The legal description of the Antioch Property used in the Antioch Deed is: All that tract or parcel of land lying and being in Land Lot 47 of the 30th District of Carroll County, Georgia, as being shown and delineated on a plat entitled "Survey for Michael L. Miller and Sherry D. Miller," dated September 8, 1997, prepared by Pioneer Land Surveying Co., certified by Jacob Roland Harrison, GA RLS # 1134, which plat is recorded in Plat Book 81, Page 172, Carroll County, Georgia, Public Real Estate Records. Said plat and the record thereof are each by reference incorporated herein and made a part hereof for a more complete and accurate description of said property.

2. Thereafter, the parties executed a second note ("Antioch Note 2") on June 20, 2004.

Antioch Note 2 evidences a loan from eBank to Rent–A–Tent, Inc. in the amount of $316,011.55 and is signed "Rent–A–Tent, Inc. James P. Gribben, Jr. and Melody F. Gribben, Owner." *See* Jones Declaration, Exhibit B. Antioch Note 2 states that the debt is secured and references "Collateral Documents dated June 20, 2004." Antioch Note 2 also indicates the purpose of the loan was a "refinance." There is no indication from the evidence available to the Court that eBank recorded a satisfaction of the Antioch Deed at the time it executed Antioch Note 2 or that either the Debtor or the Gribbens ever conveyed a security interest in the Antioch Property to secure Antioch Note 2. *See* Complaint, Exhibits I and J.

Around the same time the promissory notes were executed, two security deeds were prepared and executed. By the Barnes Deed, Rent–A–Tent, Inc. purported to convey an interest in property located on Barnes Drive in Carrollton, Georgia (hereinafter the "Barnes Property")[3] to eBank. *See* Complaint, Exhibit D. The stated intention of the Barnes Deed was to create a security interest to secure payment and performance of the obligations under the Barnes Note. The Barnes Deed was signed by James P. Gribben, President of Rent–A–Tent, Inc., and Melody F. Gribben, but does not contain the Debtor's corporate seal. The Barnes Deed was recorded in the real property records of Carroll County on July 23, 2003 (Deed Book 2344, Page 17).[4]

Thereafter, the parties executed two documents purporting to modify the terms of the Barnes Note. The Barnes Note modifications list the borrower as "Rent–A–Tent," but are signed "By: James P. Gribben" and "By: Melody F. Gribben" and do not contain the Debtor's corporate seal. *See* Complaint, Exhibits B and C. The effective dates of the Barnes Note modifications were July 15, 2006 and July 15, 2007.

In conjunction with the Barnes Note modifications, documents titled "Modification of Agreement to Deed to Secure Debt" were prepared. *See* Complaint, Exhibits E, F, and G. The Barnes Deed modifications are between "Rent–A–Tent" as "grantor" and eBank as "grantee." The intent of the modifications appears to be the modification of the Barnes Deed to account for changes in the terms of the Barnes Note. The Barnes Deed modifications are all signed by the Gribbens, with no indication of their status as officers of the Debtor, and all of the Barnes Deed modifications, except one, lack the Debtor's corporate seal. The Barnes Deed modification signed in August 2007 was signed: "By: James P. Gribben, Jr. and By: Melody F. Gribben" and includes the Debtor's corporate seal.

The Barnes Deed modifications were all recorded in the real property records of Carroll County on August 19, 2005 (Deed Book 3238, Page 248), August 18, 2006 (Deed Book 3674, Page 43), and September 11, 2007 (Deed Book 4103, Page 77). All of the modifications reference the Barnes Deed and provide that the deed shall "continue in full force and effect." The modifications to the Barnes Deed were also indexed under the Gribbens' names. *See* Affidavit of Michael Kulla, ¶ 7.

By the Antioch Deed, the Debtor purported to convey to eBank its interest in the Antioch Property. *See* Complaint, Exhibit K. The Antioch Deed was signed by the Gribbens, with no reference as to whether they were signing as officers of the Debtor, and does not contain the Debtor's corporate seal. The Antioch Deed was recorded in the real property records of Carroll County on July 1, 2003 (Deed Book 2313, page 277).[5]

---

3. The legal description of the Barnes Property used in Deed 1 is: All that tract or parcel of land lying and being in Land Lot 217 of the 5th District of Carroll County, Georgia, being more particularly shown and described on a plat of Survey entitled "Survey for Jerry Gribben," dated June 25, 2003, prepared by Crawford and Associates, certified by Douglas C. Crawford, Ga Registered Land Surveyor # 1833. Said plat being recorded in Plat Book ____, Page ____, Carroll County, Georgia Public Deed Records. Said plat and the record thereof are by reference Incorporated herein. Said tract of land being 17.88 acres.

4. The FDIC, as receiver for eBank, assigned to the Plaintiff eBank's interest in the Barnes Deed. *See* Jones Declaration, Exhibit G.

5. The FDIC, as receiver for eBank, assigned to the Plaintiff eBank's interest in the Antioch Deed. *See* Jones Declaration, Exhibit G.

The parties executed a modification with an effective date of July 20, 2006, and a modification with an effective date of July 20, 2007, both of which purport to modify the Antioch Note. *See* Jones Declaration, Exhibit B. Both Antioch Note modifications list the borrower as Rent–A–Tent, but are signed "By: James P. Gribben" and "By: Melody F. Gribben" and do not contain the Debtor's corporate seal.

In conjunction with the Antioch Note modifications, documents titled "Modification Agreement to Deed to Secure Debt" were prepared. *See* Complaint, Exhibit L; Affidavit of Michael Kulla. Four of the Antioch Deed modifications are between "Rent–A–Tent" as "grantor" and eBank as "grantee" and appear to have been intended to modify the Antioch Deed to account for the modifications of the terms of the loan evidenced by the Antioch Note. These four Antioch Deed modifications were filed for recording in the real property records of Carroll County on August 17, 2004 (Deed Book 2814, Page 43), August 18, 2005 (Deed Book 3238, Page 251), August 16, 2006 (Deed Book 3672, Page 275), and September 10, 2007 (Deed Book 4103, Page 68). *See* Kulla Affidavit, Exhibit C.

The modification at Deed Book 2814, Page 43 was signed by James P. Gribben, President of Rent A Tent, Inc., and Melody Gribben and includes the Debtor's corporate seal. The modifications at Deed Book 3238, Page 251 and Deed Book 3672, Page 275 were signed simply James and Melody Gribben and include no corporate seal. The modification at Deed Book 4103, Page 68 lists the Debtor as the grantor, is signed "By: James Gribben" and "By: Melody Gribben," and includes the Debtor's corporate seal. Three of these modifications correctly cross referenced the Antioch Deed, while one (Deed Book 3238, Page 251) incorrectly cross referenced the Barnes Deed. In fact, this modification

does not actually modify the Antioch Deed, as it specifically references and incorporates the Barnes Deed. Although the amount of the promissory note referenced in the modification is $313,000 (clearly the Antioch Note), the body of the deed contains no reference to the Antioch Deed.

Another attempted modification of the Antioch Deed, which appears to have been prepared around the same time as the first Antioch Deed modification, actually listed the Gribbens, individually, as the grantors. This modification was signed on July 20, 2004 and was filed for recording in the real property records of Carroll County on July 29, 2004 (Deed Book 2790, page 148), but again, failed to actually modify the Antioch Deed, as it specifically references and incorporates the Barnes Deed. Similarly, although the amount of the promissory note referenced in the modification is $313,000 (clearly the Antioch Note), the body of the deed fails to reference the Antioch Deed and the cross reference on the modification also refers to the Barnes Deed (Deed Book 2344, Page 17).

At some time after the modifications were executed, the Debtor defaulted on the debts owed to eBank, and eBank accelerated the notes. Plaintiff's Statement of Undisputed Facts, ¶ 10. In preparation for the foreclosure of the security deeds, eBank researched the titles of the Barnes Property and the Antioch Property and discovered that, at the time the two original security deeds were executed, the Debtor was not the owner of either the Barnes Property or the Antioch Property. Instead, the Gribbens owned the Barnes Property, and Mr. Gribben owned the Antioch Property. Plaintiff's Statement of Undisputed Facts, ¶ 11. Mr. Gribben received the Barnes property by way of an executor's deed from the B.C. Barnes Testamentary Trust and Clifford Barnes, which was dated July 15, 2003 and record-

ed in Deed Book 2383, page 209, and Mr. Gribben deeded the Barnes Property to himself and Mrs. Gribben by way of a warranty deed, which was recorded in Deed Book 2383, page 211. See Affidavit of Michael Kulla, Exhibit A, at 1. Mr. Gribbens received the Antioch Property by way of a warranty deed from Michael and Sherry Miller, which was dated June 13, 2003 and was recorded in Deed Book 2378, page 31. *See id.*, Exhibit C, at 2.

The Debtor and the Gribbens filed voluntary petitions under Chapter 7 of the Bankruptcy Code on June 13, 2008. The Debtor scheduled both the Barnes Property and the Antioch Property as an asset of the Debtor's estate, while the Gribbens did not disclose any ownership interest in the properties. Thereafter, the Plaintiff asked the Gribbens to execute "corrective" quit claim deeds conveying the Barnes Property and the Antioch Property from the Gribbens to the Debtor. Plaintiff's Statement of Undisputed Facts, ¶ 15. On July 2, 2010, the Plaintiff filed a motion for relief from the automatic stay and for approval of the corrective deeds. The Trustee opposed the Plaintiff's motion, which never came before the Court for a hearing. The parties apparently decided to defer the resolution of that motion pending the outcome of this litigation.

On February 1, 2011, the Plaintiff filed a complaint against the Trustee and the Gribbens to determine the extent and validity of its liens on the Barnes Property and the Antioch Property.[6] The Plaintiff seeks a finding that, at the time the Debtor filed its bankruptcy petition, the Plaintiff had an equitable lien on the properties through the doctrines of equitable reformation or equitable subrogation. The Trustee answered the com-

plaint, alleging that the Plaintiff had no security interest in the properties, since the Debtor could not have conveyed an interest in properties it did not own, and the equitable remedies sought by the Plaintiff are not available to correct this deficiency. The Trustee also filed a counterclaim seeking a determination that, if the Court should find that the Plaintiff had an interest in the properties, such interest is avoidable, pursuant to section 544(a) of the Bankruptcy Code, and recoverable for the benefit of the estate, pursuant to section 550. In response, the Plaintiff submits that the Trustee's ability to avoid its equitable liens is time barred under section 546.

On October 10, 2011, the Plaintiff filed the instant motion for summary judgment. The Trustee opposes summary judgment on the basis that the undisputed material facts do not support the Plaintiff's claim for relief.

## CONCLUSION OF LAW

### A. *Summary Judgment Standard*

In accordance with Federal Rule of Civil Procedure 56 (applicable to bankruptcy under FED. R. BANKR.P. 7056), this Court will grant summary judgment only if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." FED. R.CIV.P. 56(c). A fact is material if it might affect the outcome of a proceeding under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The moving party has the burden of establishing the right of sum-

---

**6.** The Gribbens previously moved for dismissal of the complaint as to themselves, and the Court granted their motion.

mary judgment, *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991); *Clark v. Union Mut. Life Ins. Co.,* 692 F.2d 1370, 1372 (11th Cir.1982), and the Court will read the opposing party's pleadings liberally. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505.

In determining whether a genuine issue of material fact exists, the Court must view the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Rosen v. Biscayne Yacht & Country Club, Inc.,* 766 F.2d 482, 484 (11th Cir.1985). The moving party must identify those evidentiary materials listed in Rule 56(c) that establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also* FED. R. CIV. P. 56(e). Once the moving party makes a prima facie showing that it is entitled to judgment as a matter of law, the nonmoving party must go beyond the pleadings and demonstrate that there is a material issue of fact which precludes summary judgment. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Martin v. Commercial Union Ins. Co.,* 935 F.2d 235, 238 (11th Cir.1991).

**B.** *Whether Plaintiff Could Have Obtained Reformation of the Deeds Under State Law*

The parties agree that the Gribbens individually owned the Barnes Property and that Mr. Gribben owned the Antioch Property on the date the Gribbens and the Debtor filed bankruptcy. Accordingly, these properties became property of the Gribbens' bankruptcy estate at that time, and all title, rights, and incidents of ownership, including the right to encumber the properties, vested in the Trustee. The parties also appear to agree that the

Barnes Deed and the Antioch Deed, as later modified, did not effectively transfer a security interest in the two properties, as the grantor on the deeds was the Debtor, who had no interest in the properties to convey. The question, therefore, is whether the Plaintiff is entitled to an equitable remedy, such as equitable reformation or equitable subrogation.

 As to the former remedy, "bankruptcy courts, as courts of equity, 'have the power to reform written instruments, including deeds, to effectuate the intent of the parties.'" *In re Miller,* 286 B.R. 334, 339 (Bankr.E.D.Tenn.1999) (quoting *Satterfield v. Sigmon (In re Mahaffey),* 1996 WL 383922 at *3 (4th Cir. July 10, 1996)); *see also In re Trask,* 462 B.R. 268 (1st Cir. BAP 2011). "'In doing so, federal courts look to state law.'" *Miller,* 286 B.R. at 339; *see also In re Hagendorfer,* 803 F.2d 647 (11th Cir.1986) ("This is a bankruptcy case, however, [state] law should be applied to determine whether a mortgage may be reformed where a mutual mistake existed at the outset.").

 Under Georgia law, "[i]f the form of conveyance is, by accident or mistake, contrary to the intention of the parties in their contract, equity shall interfere to make it conform thereto." O.C.G.A. § 23–2–25; *see also DeGolyer v. Green Tree Servicing, LLC,* 291 Ga.App. 444, 447, 662 S.E.2d 141 (Ga.App.2008). "'The cause of the defect is immaterial so long as the mistake is common to both parties to the transaction. And the negligence of the complaining party will not defeat his right to reformation if the other party has not been prejudiced.'" *DeGolyer,* 291 Ga.App. at 447, 662 S.E.2d 141 (quoting *Zaimis v. Sharis,* 275 Ga. 532, 532–33, 570 S.E.2d 313 (2002)); *see also Potter's Properties, LLC v. VNS Corp.,* 306 Ga.App. 621, 703 S.E.2d 79 (Ga.App.2010); *National Assistance Bureau, Inc. v. Macon Memorial*

*Intermediate Care Home,* 714 F.Supp.2d 1192, 1196 (M.D.Ga.2009) ("Reformation is thus appropriate even in cases where the party seeking reformation was negligent, provided there is no prejudice to the other parties to the transaction."). However, equity will not grant relief as to a bona fide purchaser for value without notice. O.C.G.A. § 23–2–34; In re Hill, 2010 WL 3927060 (Bankr.S.D.Ga. Sept. 29, 2010); *Yeazel v. Burger King Corp.,* 241 Ga.App. 90, 526 S.E.2d 112 (Ga.App.1999) (Section 23–2–34 applies to actions for equitable reformation).

First, the Trustee asserts that the doctrine of equitable reformation is simply not applicable to correct a deficiency such as this. In other words, reformation cannot assist the parties when the putative grantor was a stranger to the title of the property conveyed. The Trustee cites *Vance v. Jackson,* 233 Ga.App. 480, 504 S.E.2d 529 (Ga.App.1998) for the proposition that a party cannot convey an interest in property he does not own, regardless of his intentions. In *Vance,* the court rejected the attempt to reform a deed to include a tract of land that had been left out of the original plat of land due to survey error. Unlike the situation in this case, not only did the grantor on the deed not own the property, neither the court nor the parties knew who actually did own the tract of land at issue and, therefore, the court could not have determined whether the true owner of the tract intended the deed to convey the property. Accordingly, *Vance* stands for the common sense proposition that a court cannot reform a deed to convey property simply because the grantor thought he owned it.

That is not the case here, and a Georgia court has applied equitable reformation to facts similar to those at issue in this case. In *DeGolyer v. Green Tree Servicing, LLC,* 291 Ga.App. 444, 447, 662 S.E.2d 141 (Ga.App.2008), the state court granted the equitable reformation of a security deed to correct the fact that the grantor did not have title to the property at the time the conveyance was made. In that case, the shareholders of a closely held corporation purchased Tract 1, and the corporation purchased Tract 2. The purchase of both tracts was financed by Bank 1, which took a security interest in both tracts. The corporation also obtained a second loan secured by Tract 2 to enable it to make improvements on Tract 2. When the shareholders later began negotiating a refinance of the loan on Tract 2, the shareholders informed Bank 2 that the corporation held title to Tract 2. Yet, Bank 2 assumed that the corporation would convey title to the shareholders. All of the documents listed the shareholders as the borrowers and signators, and the note and the security deed were signed by the shareholders as individuals, rather than as officers of the corporation. After the closing of the Bank 2 loan, Bank 1's loan was paid off and Bank 1's Tract 2 security deed was cancelled.

A year later, the shareholders defaulted on the Bank 2 loan, and Bank 2 began foreclosure proceedings. In the course of doing so, Bank 2 learned that the corporation had never conveyed Tract 2 to the shareholders. Bank 2 requested the shareholders' assistance in correcting the error, but the shareholders refused. Bank 2 filed suit against the shareholders, seeking reformation of the security deed (to attach the missing legal description) and to require the corporation to convey the property to either Bank 2 or the shareholders. Bank 2 also sought a declaration that its security deed had first priority as to a portion of Tract 2, and, as an alternative, equitable subrogation.

The court held in favor of Bank 2, finding that it was "undisputed that both the [shareholders] and [Bank 2] intended for

[Tract 2] to be the subject of the security deed and the collateral for [Bank 2's] loan." "[T]he failure to have [the corporation] either convey the tract to the [shareholders], or be included as a signatory on the loan documents, ... constituted a mutual mistake that was relievable in equity." The court also noted that the shareholders would not be prejudiced by the reformation, as they had received the loan funds from Bank 2 and had used a portion of the funds to satisfy the earlier debt on Tract 2. *DeGolyer*, 291 Ga.App. at 447, 662 S.E.2d 141.

The *DeGolyer* court does not specify exactly how it reformed the deed, but it seems logical to assume the court reformed the deed by changing the grantor from the shareholders to the corporation, since merely reforming the promissory note to add the corporation as a signatory would not have accomplished the stated purpose. In such a case, it would be necessary for the court to have found that the corporation, as the party who actually held title to the property, intended to convey a security interest in the property. Simply finding that an obligor intended to convey a security interest in collateral he did not own would not be sufficient for the same common sense reason the court in *Vance* refused to apply equitable reformation. Otherwise, as the Trustee notes, the doctrine might be used to find that a complete stranger to the transaction, with no intent to do so, conveyed an interest in his property to secure a debt incurred by another.

In the *DeGolyer* case, the court appears to have concluded that the shareholders, in their capacities as officers of the corporation, intended the corporation to be the grantor of an interest in the property. The application of the doctrine of equitable reformation in such circumstances would, of course, be limited to cases in which the true owner of the property was aware of, and intended to be a party to, the transaction. The Court finds that the facts of this case are sufficiently similar to those in *DeGolyer* to apply equitable reformation if the undisputed facts permit a finding that the Gribbens intended to convey an interest in the property to secure the debts and, due to a mutual mistake of the parties, the deed failed to reflect the parties' agreement.

■ As to that, the Trustee contends the evidence does not show that the parties were under any mutual mistake as to the ownership of the properties or that the Gribbens had any intent to transfer the properties to the Debtor. The Trustee argues that evidence in the record supports a finding that the Gribbens always intended to own the properties individually and never intended to transfer ownership of the property to the Debtor. The Trustee points to the affidavit of Mr. Gribben, as well as the subsequent treatment of the properties by the Gribbens, which is consistent with the Trustee's position.

The Court does not disagree with the Trustee's characterization of the evidence. As discussed above, however, the relevant question in this case is not whether the Gribbens ever intended the Debtor to own the properties, but whether the Gribbens ever intended to grant a security interest to eBank in the properties. In his brief, the Trustee concedes that Mr. Gribben "does not 'contest' that the two (2) tracts were intended to serve as collateral for the loan" and that "[t]he land was intended to be collateral but ebank didn't take it." All of the evidence in the record confirms that the Gribbens intended to grant a security interest in the Barnes Property and the Antioch Property to secure the loan made by eBank. For example, Mr. Gribben states that he was unaware at the time of the closing that the bank failed to "take a mortgage in [his] individual name." Affi-

davit of James P. Gribben, Jr. at 2. While his affidavit confirms what the Trustee contends—that the Gribbens always owned the real property and never intended to convey the property to the Debtor—it also confirms that the Gribbens always intended to grant a security interest in their real property to collateralize the loan. *See also* Deposition of James Gribben, at 56. Further, there is no question that eBank also intended for the properties to serve as collateral for the loans. *See* Declaration of Barbara Jones, at 3 ("In June 2003, ebank made two loans to Rent–A–Tent which were intended to be secured by certain real property . . . and which were guaranteed by James and Melody Gribben.").

The Trustee's brief suggests that the doctrine of equitable reformation requires the Court to find that the parties were acting under the identical mistaken belief. In other words, in this case, a suit for equitable reformation would fail because eBank was acting under the mistaken belief that the Debtor would take title to the properties and be the primary borrower, while the Gribbens knew they would be the owners of the properties and were acting under the mistaken belief that they would be the primary borrowers and the Debtor would be the guarantor.

Having considered the statute and the case law, the Court concludes that the mistake in this case was sufficiently mutual between the Gribbens, acting in their personal capacity, eBank, and the Gribbens, acting on behalf of the Debtor, to find that the true intention of all three parties was for eBank to loan funds for the purchase of real property and to take a security interest in the properties. The operative statute allows reformation when "the form of conveyance is, by accident or mistake, contrary to the intention of the parties in their contract." While courts have often described the doctrine as re-

quiring a "common mistake," it is not clear that courts have applied that requirement as strictly as the Trustee would urge the Court to do.

For example, in *DeGolyer,* the court permitted reformation when the bank knew that the corporation owned the property and the shareholders knew the corporation owned the property, but the bank mistakenly believed the corporation would convey the property to the shareholders prior to the closing of the transaction. The court never found that the shareholders also mistakenly believed the corporation had transferred the property to the shareholders prior to the closing. If the *DeGolyer* court had applied the requirement of a common mistake as strictly as the Trustee asserts it should be applied, the court would have concluded that the mistake was simply a unilateral mistake on the part of the bank and would have refused to reform the deed. Instead, the *DeGolyer* court allowed reformation upon finding the existence of a mistake, on the part of the bank, which resulted in the deed's being inconsistent with the mutual intentions of the bank and the shareholders as to the parties' agreement. That application is consistent with the language of the statute. Here, the parties were mistaken as to different particulars of the transaction, yet both parties intended the same outcome, which was for money to be loaned and the resulting debt to be secured by the particular real property at issue in this case.

■ Second, the Trustee argues that eBank's lack of due diligence in learning of the mistake prevents the Court from applying equity to reform the deeds. In support, the Trustee cites *First National Bank Of Polk County v. Carr,* 260 Ga.App. 439, 579 S.E.2d 863 (Ga.App.2003). The *Carr* case does not appear to stand for the proposition that a lack of due diligence in

detecting a mutual mistake will bar equitable reformation.

In that case, the Carrs owned four contiguous lots (Lots 1, 2, 3, and 4) and granted a security interest in Lots 1 and 4 in favor of the bank. The Carrs believed that their house was on lots 3 and 4, and the bank believed the house was on Lots 1 and 4. A subsequent judgment creditor of the Carrs' filed a writ of *fieri facias,* levied on Lots 2 and 3, and later bought the lots, including the house. The bank filed suit seeking equitable reformation of the security deed and cancellation of the levy and sale. At trial, the court found in favor of the judgment creditor. The bank appealed and challenged the trial court's conclusion that no mutual mistake existed and that the bank had failed to exercise due diligence.

The appellate court affirmed the trial court's conclusion regarding the lack of a mutual mistake and also found that the trial court's conclusion as to the bank's lack of due diligence was not in error. However, it appears that the finding with regard to the bank's lack of due diligence was not related to the bank's suit for equitable reformation, but rather related to its allegation that the Carr's had "defrauded the Bank by giving an incorrect or incomplete legal description." In discussing the bank's lack of diligence, the court cited a case involving a suit for relief from a unilateral mistake allegedly induced by the other party's fraud and then concluded that, "[s]ince the Bank neglected to use ordinary means of information to protect itself, it is not entitled to relief under *Crawford.*" The *Crawford v. Williams* case, 258 Ga. 806, 375 S.E.2d 223 (Ga. 1989), is also a case about alleged fraud involving the sale of real property and, in

that case, the court concluded that a "party buying real property who makes no attempt to discover the boundaries of the property cannot be said to have 'justifiably relied' on a misrepresentation by the seller regarding those boundaries."

If the Carr case does in fact stand for the proposition that equitable reformation requires a finding of diligence, it is in conflict with numerous cases that state that the negligence of the complaining party is not a bar to reformation, so long as the other party is not prejudiced.[7] See *National Assistance Bureau, Inc. v. Macon Memorial Intermediate Care Home,* 714 F.Supp.2d 1192, 1196 (M.D.Ga.2009) ("Reformation is thus appropriate even in cases where the party seeking reformation was negligent, provided there is no prejudice to the other parties to the transaction."); *Aames Funding Corp. v. Henderson,* 275 Ga.App. 323, 620 S.E.2d 503 (Ga.App.2005) (allowing reformation of property description in deed to cover omitted property over objection of party who subsequently lent money to debtor and took a second priority deed to the same property); *Chapman v. Cassels Co.,* 180 Ga. 349, 179 S.E. 91 (Ga.1935).

Here, the Gribbens always intended to grant a security interest in the properties to eBank in exchange for the loaned funds. It further appears from Mr. Gribben's affidavit that the funds loaned by eBank benefitted the Gribbens personally. *See* Gribben Affidavit, ¶ 2. Therefore, the Gribbens could not be prejudiced by the reformation of the deeds to provide for such a conveyance. Without a showing of prejudice to the Gribbens, the Plaintiff's lack of due diligence in detecting the error is irrelevant.

---

**7.** It is generally held that the non-negligent party is not prejudiced by reformation when the reformation places the parties in the position in which they believed they were placing themselves. *National Assistance Bureau, Inc.,* 714 F.Supp.2d at 1196.

Under the law as it was applied in *De-Golyer*, the undisputed material facts persuade the Court that, but for the intervening bankruptcy filing, a Georgia court would have allowed the equitable reformation of these deeds. Upon reformation, the Plaintiff would have been entitled to a lien on the properties, and that lien would have related back to the original transaction, thus enjoying priority over all subsequent interests except those of a bona fide purchaser without notice of the Plaintiff's equitable interest. The question remains whether the Trustee's status as a hypothetical bona fide purchaser is a valid defense to the remedy and, if so, whether the Trustee's failure to file a suit against the Plaintiff within the time required by section 546(a) would bar the Trustee from raising the defense.

C. *Whether Section 546(a) Prevents the Trustee from Raising His Status as a Hypothetical Bona Fide Purchaser as a Defense to the Reformation of the Deeds*

▇▇▇ Under section 544 of the Bankruptcy Code, "[t]he trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any other creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by ... a bona fide purchaser of real property ... from the debtor ... that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists." 11 U.S.C. 544(a)(3). Section 544(a)(3) provides a trustee with two tools that can be used in furtherance of his duty to collect and reduce to money property of the bankruptcy estate.

First, the trustee has the "*rights* and powers" of a bona fide purchaser of real estate and second, the trustee has the power to avoid any transfers of property that such a party could avoid. Section 546(a) restricts the power of the trustee to avoid such transfers, as it provides that a suit under section 544 may not be commenced after the earlier of: "(1) the later of—(A) 2 years after the entry of the order for relief; or (B) 1 year after the appointment or election of the first trustee under section 702 ... if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or (2) the time the case is closed or dismissed." 11 U.S.C. § 546(a). By its terms, section 546(a) does not restrict or otherwise place a time limit on the trustee's ability to rely on his rights as a bona fide purchaser of real estate.

▇▇▇ The Plaintiff asserts that the Trustee would not be permitted to commence a suit under section 544(a)(3) in this case because the time for doing so under section 546(a) expired on or about June 13, 2010, two years after the Gribbens' bankruptcy petition was filed. The Court finds that the Trustee was not required to file a suit to avoid a lien held by the Plaintiff. As noted above, a Georgia court would not reform a deed to the detriment of a bona fide purchaser for value without notice of the encumbrance.[8] Therefore, the Trustee may simply raise his status as such a party

---

8. Further, to the extent the Plaintiff relies on equitable subrogation, the Eleventh Circuit Court of Appeals has stated that, under Georgia law, "equitable subrogation does not create an equitable lien; instead, it is an equitable doctrine which affects the priority of property interests that exist apart from equi- ty." *In re Hedrick*, 524 F.3d 1175, 1182 (11th Cir.2008). Accordingly, the Trustee can raise his status as a bona fide purchaser as a defense to equitable subrogation without the requirement of filing a suit to avoid an equitable lien.

as a defense to the reformation. *See In re Bloxsom*, 389 B.R. 52 (Bankr.W.D.Mich. 2008) (noting that, under Michigan law, a suit for reformation does not result in an equitable lien until the court grants the reformation; consequently, the trustee's suit to avoid the creditor's lien was more appropriately an action for a declaratory judgment stating that the real property was unencumbered). Since there is no lien to avoid, the statute of limitations preventing the Trustee from doing so is inapplicable.[9]

### D. Whether the Trustee is a Bona Fide Purchaser of Real Estate without Notice of the Plaintiff's Interest in the Properties

█ As noted above, under Georgia law, the court would not grant equitable reformation to a party to the detriment of the rights of a bona fide purchaser for value who lacked notice of the plaintiff's interest in the properties. "To qualify as a bona fide purchaser for value without notice, a party must have neither actual nor constructive notice of the matter at issue." *Virginia Highland Civic Ass'n, Inc. v.* *Paces Properties, Inc.*, 250 Ga.App. 72, 550 S.E.2d 128 (Ga.App.2001) (citing *Anderson v. Streck*, 190 Ga.App. 224, 378 S.E.2d 526 (Ga.App.1989)); *VATACS Group, Inc. v. HomeSide Lending, Inc.*, 276 Ga.App. 386, 623 S.E.2d 534 (Ga.App.2005).

█ Under Georgia law, "[a] purchaser of land is charged with constructive notice of the contents of a recorded instrument within its chain of title." *Virginia Highland Civic Ass'n, Inc.*, 250 Ga.App. at 74, 550 S.E.2d 128. Conversely, a document recorded outside the chain of title does not impart constructive notice. *See id.* (citing *Middle Georgia Realty, Inc. v. IDS Homes, Inc.*, 231 Ga. 57, 59 200 S.E.2d 141, 143 (1973)); *Palmer v. Forrest, Mackey and Associates, Inc.*, 251 Ga. 304, 307–08, 304 S.E.2d 704 (1983) ("We find that, because the lender's security deed was not in the chain of title, it is as if it were not recorded for purpose of giving constructive notice.") (citing OCGA § 44–2–1; *McCandless v. Yorkshire Guarantee & Securities Corp. Ltd.*, 101 Ga. 180, 28 S.E. 663 (1897); *Ivey v. Transouth Financial Corp.*, 566 F.2d 1023, 1025–26 (5th Cir.1978)). Chain of title includes all re-

9. Further, even if the Trustee were required to file a suit to avoid an equitable lien, the Court finds the limitations period in section 546(a) has been equitably tolled. *See In re Pugh*, 158 F.3d 530 (11th Cir.1998); *In re International Administrative Svcs., Inc.*, 408 F.3d 689, 700 (11th Cir.2005) ("Where, despite the exercise of due diligence, a trustee fails to timely bring an avoidance action due to fraud or extraordinary circumstances beyond the trustee's control, equitable tolling prevents the expiration of § 546(a)'s limitations period."). The Gribbens did not schedule either property as an asset, and, although the Debtor scheduled the properties, the Debtor also scheduled the liens held by the Plaintiff, making it appear from the Trustee's review of the schedules in both cases, as if there was no equity in the properties. According to the Trustee's affidavit, no testimony was provided during the course of the creditors' meetings in either case to put the Trustee on notice that the Gribbens actually owned the properties. *See* Affidavit of Theo Mann, Docket Number 21, Exhibit 2. The Trustee reviewed the schedules and statement of financial affairs in two related cases, which were sworn to by the respective debtors under penalty of perjury, and conducted a meeting of creditors in both cases. All of these sources were consistent. Further, it appears that the Gribbens, the Debtor, eBank, and the Plaintiff all knew that the properties were unencumbered prior to the expiration of the section 546(a) limitations period, but no party informed the Trustee of this fact until it was too late. *See* Plaintiff's Statement of Undisputed Facts, ¶ 13 (eBank was aware of the issue with the deeds even before the Gribbens filed their bankruptcy petition); Affidavit of Michael Kulla (stating that he performed the title search on the properties in May 2008); Affidavit of Lisa Harper; Affidavit of Theo Mann, Docket Number 21, Exhibit 2.

corded instruments pertaining to the property that are executed by an entity holding a recorded interest in the property at the time of the execution of the instrument. *See SunTrust Bank v. Equity Bank, S.S.B.*, 312 Ga.App. 644, 645, 719 S.E.2d 539 (2011) (citing *VATACS Group, Inc. v. HomeSide Lending, Inc.*, 276 Ga.App. 386, 391, 623 S.E.2d 534 (Ga.App.2005)).

▪▪▪ Further, "Georgia recognizes inquiry notice, which imputes knowledge of an earlier interest to a later purchaser of an interest in land whenever there is '[a]ny circumstance which would place a man of ordinary prudence fully upon his guard, and induce serious inquiry.'" *In re Hedrick*, 524 F.3d 1175, 1183 (11th Cir.2008); *see also In re Hagler*, 429 B.R. 42 (Bankr. N.D.Ga.2009) ("This principle is codified by O.C.G.A. § 23–1–17, which provides in relevant part that '[n]otice sufficient to excite attention and put a party on inquiry shall be notice of everything to which it is afterwards found that such inquiry might have led.'"). As a potential purchaser is not charged with constructive notice of a deed recorded outside the chain of title, a reference within such a deed cannot place the potential purchaser on inquiry notice as to the existence of an unrecorded interest.

▪▪▪ Here, the Debtor was the grantor of the Barnes Deed and the Antioch Deed, but held no recorded interest in the properties at the time the deeds were executed. Accordingly, the Barnes Deed and the Antioch Deeds were recorded outside the chain of title of these properties and did not impart constructive notice of eBank's failed attempts to acquire a security interest.

▪▪▪ The Plaintiff asserts that the Trustee was on inquiry notice of the existence of the Barnes Deed and the Antioch Deed because the subsequent modifications of the Barnes Deed and the Antioch Deed were indexed under the Gribbens' names. Therefore, the Plaintiff asserts, the modifications would have been sufficient to "excite attention" and place the Trustee on inquiry notice as to the existence of the Plaintiff's security deeds.

As a hypothetical bona fide purchaser for value, under Georgia law, the Trustee is charged with constructive notice of any document properly recorded in the chain of title for the two properties. *See In re Hagendorfer*, 803 F.2d 647 (11th Cir.1986); *In re Henderson*, 284 B.R. 515 (Bankr. N.D.Ga.2002) (Mullins, J.) (the fact that properly recorded documents were inconsistent would have warranted further inquiry into the state of the title); *In re Sheetex, Inc.*, 1999 WL 739628 (Bankr. M.D.Ga.1999) ("It follows that if circumstances would prevent any hypothetical purchaser from taking Debtor's property in good faith and without notice, then there exist no 'shoes' of a hypothetical bona fide purchaser at the time of the commencement of the case for Trustee to step into."); *In re Hill*, 2010 WL 3927060 (Bankr.S.D.Ga. Sept. 29, 2010).

As noted above, however, deeds recorded outside the chain of title do not provide constructive notice of the contents of those deeds. For the most part, the subsequent modifications of the deeds suffer from the same defect as the deeds themselves, as the grantor (the Debtor) lacked a recorded interest in the property at the time of their execution. For this reason, they also failed to provide constructive notice of their contents and could not place the Trustee on inquiry notice as to the existence of the deeds. The fact that the modifications were indexed under the Gribbens' names does not change the fact that the modifications are outside the chain of title and, therefore, cannot provide constructive notice of the Plaintiff's

claim. *See In re Hagler*, 429 B.R. 42, 53 n. 4 (Bankr.N.D.Ga.2009) (Massey, J.) ("Defendant's argument that the first security deed itself give rise to a duty of inquiry because it was allegedly indexed confuses constructive notice with actual notice and is totally without merit.").

■ The Court's conclusion here is limited by one exception. On July 20, 2004, the parties executed what they seemed to believe was a modification of the Antioch Deed. This modification was filed for recording on July 29, 2004 and was recorded at Deed Book 2790, page 148. This modification lists the Gribbens, individually, as the grantors. Although the promissory note mentioned is in the amount of $313,000 (clearly the Antioch Note), the deed purportedly being modified was the Barnes Deed. The Trustee has maintained throughout this matter that the deeds themselves were defective and could not transfer any title. The Court appreciates the fact that the modification itself in not effective to modify a deed that transferred no interest in property. That being said, the question is not whether the modification itself has any effect on the deed it purports to modify, but whether the modification was duly recorded, such that it provides constructive notice of its contents. As the modification is between the Gribbens, who were the record title owners of the Barnes Property, and eBank, and it was duly recorded (properly attested, etc.), the modification is within the chain of title for the Barnes Property.[10] In such a case, the modification provides constructive notice, and the Trustee is charged with notice of its contents.

■ The modification clearly refers to a security deed to the Barnes Property given to eBank, dated July 22, 2003 and recorded in Deed Book 2344, Page 17 (the Barnes Deed). The information in the modification is sufficient to excite the attention of "a man of ordinary prudence fully upon his guard, and induce serious inquiry." The Trustee would be deemed to have knowledge of the existence of a deed, which, from the face of the modification, appeared to be from the record title holder of the Barnes Property (the Gribbens) to eBank. Once the Trustee had seen the Barnes Deed, the Trustee would have been required to inquire of the Gribbens and eBank as to the transaction that led to the creation of the Barnes Deed. At that point, the facts necessary to discern the equitable nature of eBank's interest in the Barnes Property would have been known to the Trustee, thus preventing the Trustee from becoming a bona fide purchaser without notice.

As no questions of material fact remain and it is clear that the Plaintiff has a right to equitable reformation with regard to the Barnes Deed, summary judgment is appropriate with regard to the Plaintiff's claim to equitable reformation of the Barnes Deed. For the same reason, any counterclaim the Trustee might have for avoidance of the Plaintiff's equitable interest in the Barnes Property must fail.

■ But as to the Antioch Deed, nothing in the chain of title provided constructive notice to a potential purchaser of the Antioch Property of the Plaintiff's equitable interest in the Antioch Property. For this reason, the Plaintiff cannot prevail on

---

**10.** The Barnes Deed itself is also outside the chain of title for the Barnes Property because it was recorded at Deed Book 2344, page 9, 39 record books prior to the recording of the deed that vested title to the Barnes Property in Mr. Gribben (Deed Book 2383, page 9). Nonetheless, the modification is inside the chain of title, as it was recorded after the vesting deed at Deed Book 2790, page 148.

its claim for equitable reformation of the Antioch Deed.

E. *Whether the Plaintiff Could Have Obtained Equitable Subrogation with Regard to the Antioch Property*

 The next question is whether the Plaintiff may be able to claim an interest in the Antioch Property because at least a portion of the proceeds of the loan evidenced by the Antioch Note were used by Mr. Gribben to pay off a debt secured by the Antioch Property held by Regions Bank. Under Georgia law, "[e]quitable subrogation may benefit a party who 'advances money to pay off an [earlier] encumbrance on realty either at the instance of the owner of the property or the holder of the encumbrance ... [and] the new security is for any reason not a first lien on the property.'" *See In re Hedrick*, 524 F.3d 1175, 1182 (11th Cir.2008) (citing *Bankers Trust Co. v. Hardy*, 281 Ga. 561, 640 S.E.2d 18, 20 (2007); *Davis v. Johnson*, 241 Ga. 436, 246 S.E.2d 297, 300–01 (1978)). The party seeking equitable subrogation, however, must establish that it is "not chargeable with culpable or inexcusable neglect." *Id.* Finally, as with a suit for equitable reformation, a Georgia court would not grant equitable subrogation against a bona fide purchaser without notice of the interest. *In re Morgan*, 449 B.R. 821 (Bankr.N.D.Ga.2010) (Brizendine, J.).

 At best, there remains an issue of fact as to whether the eBank was guilty of culpable or inexcusable neglect. *See In re Siskey Hauling Co., Inc.*, 456 B.R. 597 (Bankr.N.D.Ga.2011) (Diehl, J.) ("A party who fails to avail itself of a proper legal remedy is guilty of inexcusable neglect."). eBank clearly had a proper legal remedy available to it to ensure that it would succeed to the first priority lien on the Antioch Property. There is no evidence in the record to establish why the transaction eBank attempted failed or what steps, if any, eBank took to ensure that it would succeed.

At worst, the Plaintiff's claim fails for the same reason its claim for equitable reformation fails with regard to the Antioch Property. As discussed above, the Trustee had no notice of eBank's failed attempt to obtain a security interest in the Antioch Property. Further, the debt to Regions Bank was paid long before the Gribbens filed their petition. The Court assumes the security deed owed to Regions Bank was also marked satisfied in the records at that time.[11] If so, on the petition date, no bona fide purchaser could have been on notice that any other lender had a right to step into the shoes of a previous lender. As to all the world, the Antioch Property appeared to be completely unencumbered. *Compare In re Hedrick*, 524 F.3d 1175 (11th Cir.2008) (no bona fide purchaser could have obtained an interest superior to the lender's interest because the lender's new security deed was filed before the refinanced deed was marked satisfied and, accordingly, "the earlier security deeds remained uncancelled insofar as the public recordings were concerned" and provided inquiry notice of an existing encumbrance), *with In*

---

11. According to the Plaintiff's statement of undisputed material facts, $231,095.12 of the proceeds of the loan made by eBank to the Debtor were used to pay off a prior debt on the property held by Regions Bank. *See* Plaintiff's Statement of Undisputed Facts, ¶ 6. While there is no evidence in the record to establish whether Regions Bank actually recorded a satisfaction of its security deed, the refinance transaction occurred in 2003, while the Gribbens filed their bankruptcy petition in 2008. Thus, based on these undisputed facts, the Court assumes for purposes of denying the motion for summary judgment, that, as of the petition date, a satisfaction of Regions Bank's deed was of record.

*re Morgan,* 449 B.R. 821 (Bankr.N.D.Ga. 2010) (Brizendine, J.) (denying equitable subrogation where security deed to lender attempting to refinance a prior debt was recorded in the wrong county, as the trustee "holds the power of a bona fide purchaser for value and would be prejudiced if Defendant's interest was substituted into the prior position" of the prior lender, whose deed was cancelled of record before the filing of the bankruptcy case, and "a bona fide purchaser on the petition date would not have notice of any outstanding interest on either that entity's behalf or that of" a new lender).

For the above-stated reasons, the Plaintiff has failed to establish that is entitled as a matter of law to a judgment on its claim of equitable subrogation with regard to the Antioch Property. The Plaintiff's motion for summary judgment with regard to that claim must be denied.

### CONCLUSION

Having carefully considered the motion and the evidence of record, the Court concludes that the Plaintiff's Motion for Summary Judgment should be, and hereby is, **GRANTED** in part and **DENIED** in part.

Under the undisputed facts of this case, the Plaintiff is entitled to judgment as a matter of law with regard to its claim for equitable reformation of the security deed executed by the Debtor, Rent–A–Tent, Inc., to eBank, in which the Debtor purported to grant a security interest in the Barnes Property to eBank. The deed shall be equitably reformed to provide that James P. Gribben, Jr. and Melody F. Gribben, record title owners of the Barnes Property, conveyed a security interest in the Barnes property to eBank, Plaintiff's predecessor in interest. Likewise, the Plaintiff is entitled to judgment that the Trustee's counterclaim for avoidance of any equitable interest held by the Plaintiff in the Barnes Property fails as a matter of law.

The Plaintiff has failed to establish that it is entitled to judgment as a matter of law with regard to its claim that it is entitled to equitable reformation of the security deed executed by the Debtor, Rent–A–Tent, Inc., to eBank, in which the Debtor purported to grant a security interest in the Antioch Property to the Plaintiff's predecessor, eBank. The Plaintiff has also failed to establish that it is entitled to judgment as to its claim for equitable subrogation with regard to any prior deed encumbering the Antioch Property.

The judgment granted Plaintiff by this order shall constitute a final judgment, within the meaning of Rule 54(b) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7054(a) of the Federal Rule of Bankruptcy Procedure, as the Court finds no just reason for delay.

A judgment in accordance with this order will be entered concurrently.